Commonwealth *v.* Wolpert, Appellant.

*William E. Chillas,* with him *May, Grove, Stork and Blakinger,* for appellant.

*Henry J. Rutherford,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAULDING, J., June 14, 1973:

Appellant Eugene C. Wolpert was convicted by President Judge William G. JOHNSTONE, JR., of the Court of Common Pleas of Lancaster County, sitting without a jury, of operating a motor vehicle while under the influence of intoxicating liquor. He appeals from the denial of his motion to suppress evidence of a blood test.

Appellant was operating his automobile, in which there were two passengers, on the evening of April 22,

1971. His vehicle crashed into a light standard in the Center Square of Marietta Borough, Lancaster County. The prosecuting police officer arrived minutes after the accident and detected a strong odor of alcohol. He found all three occupants of the car injured and had them taken to the hospital. Appellant was bleeding profusely from a gash on his chin and had loosened all of the teeth in his lower jaw. At the hospital he received treatment, including anesthesia and seventeen sutures in his chin. When the policeman sought to have a breathalizer test given to appellant, he was advised by the attending physician that appellant could not supply sufficient breath for the test, both because his jaw had been anesthetized and because there was a possibility of reopening the chin laceration. The officer then directed that a blood test be administered, despite appellant's objections.[1] Blood was withdrawn and the test made by a qualified individual in a medically-acceptable manner, but without a warrant. The test results indicated a blood alcohol content of .21 percent, raising the statutory presumption of intoxication. Act of April 29, 1959, P. L. 58, §624.1, as amended, 75 P.S. §624.1(c)(3).[2] Both appellant and the Commonwealth agree with the lower court's finding that "[t]he record is clear that the defendant [appellant] was not under arrest at the time blood was extracted from him . . . ." Rather, the prosecuting officer charged him with the offense 16 days after the blood was taken, by means of

---

[1] The court below concluded that the "record is clear that the defendant . . . did not voluntarily consent to the taking of this blood. . . . The defendant asked the officer not to make any test because if you do, I will 'have had it'."

[2] The Act states, inter alia, that: "(c) If chemical analysis of a person's breath, blood or urine shows— . . . (3) That the amount of alcohol by weight in the blood of the person tested is ten one-hundredths (0.10) percent or more, it shall be presumed that the defendant was under the influence of intoxicating liquor."

a criminal complaint. A summons was then mailed to appellant.

Initially, we are faced with precedents which, either precede or do not consider the 1968 amendment to the Act of April 29, 1959, *id,* commonly called the "implied consent" statute. As summarized in *Commonwealth v. Murray,* 441 Pa. 22, 25, 271 A. 2d 500 (1970), these cases hold that: "The person of an individual may be lawfully searched, even without a search warrant, if the search is conducted as an incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034 (1969), and Commonwealth v. Ellsworth, 421 Pa. 169, 218 A. 2d 249 (1966). And, under certain circumstances, this includes intrusion into a person's body for blood to be analyzed for alcoholic content. Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826 (1966). Cf. Commonwealth v. Gordon, 431 Pa. 512, 246 A. 2d 325 (1968). However, for such a search to be valid, it must be substantially contemporaneous with the arrest and confined to the immediate vicinity thereof. Stoner v. California, 376 U.S. 483, 84 S. Ct. 889 (1964); Commonwealth v. Harris, 429 Pa. 215, 239 A. 2d 290 (1968)." *Schmerber,* supra, the landmark case in this area of the law, also rejected the contention that the admission of blood test results into evidence is a violation of the Fifth Amendment privilege against self-incrimination.

*Commonwealth v. Murray,* supra, applied these holdings to a factual situation similar to the instant case. The appellant there was involved in an accident when he drove his automobile across the highway into an oncoming vehicle, killing two of its occupants and seriously injuring himself. A test of his blood was made at the hospital at direction of the investigating policeman without either appellant's consent or a warrant. The test showed a blood alcohol level indicating intoxi-

cation. Arrest warrants were issued based on the test results, but due to Murray's poor physical condition and hospitalization he was not arrested until 13 days later, when he was discharged from the hospital. Our Supreme Court reversed Murray's convictions for involuntary manslaughter, reasoning that: "While the exigencies of the existing circumstances may render the search valid, even if not strictly contemporaneous with the arrest, the present situation is not such a case. Although the altruistic motives of the arresting officer in delaying the arrest are to be admired, this in itself, cannot warrant the conclusion that the search of Murray's person thirteen days before his arrest was an 'incident' thereto." 441 Pa. at 25.

Prior to enactment of the implied consent statute, the decision in *Murray* would unquestionably have been controlling here, requiring reversal and suppression of the results of the blood test. As shown above, the Supreme Court there indicated approval of warrantless blood tests such as the one administered to appellant, but restricted the period of time following such a test in which an arrest had to be made in order to justify the test as being "substantially contemporaneous" with the arrest. The 16-day delay in the instant case combined with the absence of "altruistic motives" for the delay present in *Murray* make the search here even less justified. These facts preclude creating the fiction that appellant's arrest may be read back to permit the blood test to be viewed as an incident thereto.

The Commonwealth, however, argues, inter alia, that the test used to secure appellant's blood alcohol level, made despite his objections, is authorized by the implied consent law, which was passed on July 31, 1968 and amended on December 22, 1969, both subsequent to the date of the offense and arrest in *Murray*. Although not specifically framed as such, the Commonwealth appar-

ently contends that either: (1) the holding in *Murray* is distinguishable from the instant case on its facts, the search here being justified for "emergency reasons", or (2) the implied consent statute supersedes that decision and its provisions were followed here.

It seems clear that the facts in the instant case are indistinguishable from the relevant facts in *Murray*. The Commonwealth's attempt to distinguish *Murray* is without any basis in fact or law. Its brief states: "Appellant contends that the blood test in this case is inadmissible because it was not taken in the course of a search incident to a valid arrest. However, the Commonwealth concedes that Appellant was not under arrest at the time. Therefore, the principles of Com. v. Murray, 441 Pa. 22 (1970), cited by Appellant are not applicable." The discussion of the *Murray* case above indicates that like the appellant here, Murray was not under arrest at the time of the blood test which was made for "emergency reasons." Indeed, the whole point of the *Murray* decision is that the time delay in arresting the defendant was too long to allow the test to be justified as substantially contemporaneous with the arrest. The Commonwealth's first argument is thus a non sequitur.

The Commonwealth's second argument does present substantial questions concerning the application of the implied consent law to the instant case. It seems clear that the provisions of the act encompass the factual situation here, both because of the express language of the statute and the intent of the legislature.[3] The pertinent parts of the act provide that:

---

[3] See The Statutory Construction Act, Act of May 28, 1937, P. L. 1019, art. I, §§1 et seq., 46 P.S. §§501 et seq., §551, indicating that: "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded." See also, *Davis v. Sulcowe*, 416 Pa. 138, 205 A. 2d 89 (1964). The applicability of the informed consent act here is indicated by "the words of the law". However,

"75 P.S. §624.1  *Intoxication chemical tests, etc.*

"(a)  Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor. Qualified personnel means a physician or a police officer who has received training in the use of such equipment in a training program approved by the secretary. If any person is *placed under arrest and charged* with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, *the test shall not be given* but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons.

"(b)  In any summary proceeding or criminal proceeding in which the defendant is charged with driving a motor vehicle or tractor while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood, as shown by a chemical analysis of his breath, his blood, or his urine, which analysis was conducted with equipment approved by the secretary and operated by qualified personnel, shall be admissible in evidence.

". . . .

the manner in which the statute should be interpreted under the facts of this case requires us to look to the intent of the act.

"(f) If for any reason a person is physically unable to supply enough breath to complete a chemical test a physician or a technician acting under his direction may withdraw blood for the purpose of determining the alcoholic content therein. Consent is hereby given by such persons. The chemical analysis of the blood taken under these circumstances shall be admissible in evidence.

". . . .

"(h) The refusal to submit to a chemical test may be admitted into evidence as a factor to be considered in determining innocence or guilt." (Emphasis added.) Act of April 29, 1959, as amended, supra.[4]

Initially, we note that the testimony here reveals that the blood test was administered by a qualified person and at the direction of an officer who had "reasonable grounds to believe" that appellant had been driving under the influence. Appellant was not, however, "placed under arrest and charged" at the time he was requested to take the test or at the time the test was made. There was no reason to make an arrest here, since due to his injuries appellant was unlikely to flee from the hospital and his identity had already been ascertained. The Commonwealth contends that since appellant was not under arrest, the provision of the

---

[4] "Section 624.1 was added to The Vehicle Code at the Legislative Session of 1961. In its original form, it provided that the operator might be given a breath test if he consented thereto. By amendment approved December 22, 1969, P. L. 392, there were introduced the concept of assumed consent to the chemical breath test, the provision for suspension of operator's privileges for refusal and the admissibility in criminal proceedings of the fact of such refusal. As first enacted, Section 624.1 required consent to testing. By amendment, consent was supplied by law and refusal became admissible as evidence of guilt. As a deterrent to refusal, the recusant's driving privileges were made subject to suspension on this ground." *Commonwealth v. Gallagher*, 3 Pa. Commonwealth Ct. 371, 374, 283 A. 2d 508 (1971).

statute indicating that if a person refuses to take a test, "the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing", is inoperable. We find this argument unpersuasive.

The legislature's primary consideration in passing the implied consent statute was recognized by Judge RODGERS of the Commonwealth Court in his opinion in *Gallagher*, supra, n. 4: "The automobile has bestowed great material, intellectual and social benefits. By the agency of the bad driver, it has also visited upon a substantial minority of persons disasters of Apocalyptic dimensions. At the forefront of the instruments of destruction has been the drunken driver. Section 624.1 and its precursors from other jurisdictions were intended to supply scientific, physiological proof of the presence or absence of the influence of intoxicants, as a substitute for or supplement to the observations of eyewitnesses, uncertain when made and usually required to be recalled long after the event." 3 Commonwealth Ct. at 374. It is apparent that the legislature intended the statute to apply to all cases where drunken driving is suspected. They provided, as a remedy for the statutory option of refusal to consent to a chemical test, that anyone who refuses to consent to a test for alcohol may have his driver's license suspended without a hearing and that the refusal is admissible into evidence "as a factor to be considered in determining innocence or guilt". While the statute seems to extend both these penalties and the privilege of refusal to take the test to persons "under arrest and charged", we hold that the implied consent statute is applicable to all drunk driving cases. While a person stopped for suspicion of driving under the influence may or may not be legally under arrest, from a laymen's point of view, once he has been stopped by a policeman and requested to take a

test for alcohol in his system a person is arrested and charged with operating a vehicle under the influence and is no longer free to leave.[5]

Further, it would be illogical to conclude that the legislature provided the statutory right of refusal to take a chemical test to persons under arrest, but not to persons appearing less culpable, who the investigating officer does not deem so clearly under the influence of alcohol as to justify their arrest prior to administration of the test. Such a warped interpretation would foreshadow scenes of wrestling matches on the highway between drunk drivers, not yet under arrest and thus without the statutory right to refuse a breathalizer test, and police officers attempting to administer the tests. Undoubtedly an arrest meeting the precise wording of the statute would always follow such a confrontation, but after possible injury to the officer, arrestee, or both. We find it much more reasonable to conclude that the legislature must have envisioned this possibility and concluded that *any* person suspected of drunken driving may exercise an option that a chemical test "shall not be given", but that if he does so he faces the prospect of losing his license to operate a motor vehicle without a hearing, which procedure was held proper in *Gallagher,* id. If a person already arrested for driving under the influence is permitted to refuse to undergo a chemical test, a *fortiori,* anyone not yet arrested is afforded the same right.

One final question remains for our consideration. The Commonwealth contends that even if appellant would have been able to refuse a breathalizer test as

---

[5] It may be noted that a legal warrantless arrest could not have been made when the officer arrived on the scene here, since he did not observe appellant operating his automobile in the officer's presence and driving under the influence is a misdemeanor. *Commonwealth v. Troutman,* 223 Pa. Superior Ct. 509, 302 A. 2d 430 (1973).

provided by paragraph (a) of Section 624.1 despite not being "under arrest and charged", there was no right of refusal here since appellant was unable to undergo that test and was given a blood test as provided for by paragraph (f), which does not specifically recite a right to refuse to take a blood test. This contention is refuted by the statutory scheme from which it appears obvious that all of the paragraphs subsequent to it refer back to, and/or incorporate the provisions of, paragraph (a). The "probable grounds to believe" requirement, right of appeal, and punishment (suspension of license without hearing) clauses are also absent from paragraph (f), but clearly are also incorporated by inference. Further, the numerical percentages of blood alcohol content enumerated by paragraph (c) must be incorporated into paragraph (f) so that the results of the blood test may be judged to either create or rebut the presumption of intoxication. The only reasonable conclusion is that all of the paragraphs of Section 624.1 are to be read together, rather than independently. As such, the right of refusal appearing in paragraph (a), which specifies that a "chemical test" which is refused shall not be given, includes blood tests administered pursuant to paragraph (f), as well as breathalizer tests.

Under both the decision in *Commonwealth v. Murray,* supra, and the proper interpretation of the implied consent statute,[6] the results of the blood test here should have been suppressed.[7]

---

[6] See Comment, 74 Dickinson L.R. 219 (1970), for a discussion of the implied consent statute and constitutional problems related to it.

[7] We do not reach the question of whether the implied consent statute entirely supersedes the *Murray* holding, since our decision is the same here whether the statute alone applied, or both the statute and holding in *Murray* were applicable.

The judgment of sentence is reversed and the case remanded for a new trial.

WRIGHT, P. J. and WATKINS, J., would affirm on the opinion of the court below.