Commonwealth *v.* Rutan, Appellant.

Submitted December 7, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

*Robert F. Kelly*, for appellant.

*Vram Nedurian, Jr.,* and *Ralph B. D'Iorio*, Assistant District Attorneys, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., June 21, 1974:

This appeal presents one question: Must a person lawfully requested to take a breathalyzer test be told that he can refuse to take the test and that the results of the test or evidence of his refusal can be used against him at trial? The answer is no.

Under the terms of the "implied consent law", The Vehicle Code, Act of April 29, 1959, P. L. 58, §624.1, added by Act of July 28, 1961, P. L. 918, §1, as amended by Act of July 31, 1968, P. L. 758, No. 237; §1; Act of December 22, P. L. 392, §1, a person may be asked to submit to a breathalyzer test where there are "reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor." §624.1(a). If the person consents to testing, the results of the test are admissible evidence. §624.1(b). If the person refuses, he may lose his license to drive,

§624.1(a), and "[t]he refusal to submit ... may be admitted into evidence as a factor to be considered in determining innocence or guilt." §624.1(h). The implied consent law contains no requirement that a person be told that he can refuse to submit to testing or that a refusal carries consequences,[1] and we hesitate to read such a requirement into the law. *Daugherty v. Continental Can Co., Inc.*, 226 Pa. Superior Ct. 342, 348, 313 A. 2d 276, 279 (1973). *Cf. Commonwealth v. Abraham*, 7 Pa. Commonwealth Ct. 535, 300 A. 2d 831 (1973).

Especially do we hesitate since the need for requiring warnings is not altogether clear. It would certainly avoid confusion if a person were given a full explanation of his rights and obligations in regard to breath tests. *See, e.g., Veilleux v. Springer*, 131 Vt. 33, 43, 300 A. 2d 620, 626 (1973). On the other hand, it has been said that "all persons are presumed to know the law and are therefore presumed to be so informed as to [their] rights. They should acquaint themselves, at least with those laws most likely to affect their usual activities." *People v. Kovacik*, 205 Misc. 275, 292, 128 N.Y.S. 2d 492, 509 (1954).[2]

---

[1] A number of jurisdictions have included within the terms of their implied consent laws provisions for warnings. *See, e.g.*, West Cal. Vehicle Code §13353 (warnings that failure to submit may cause loss of license; driver has choice of blood, breath, or urine tests; driver has no right to have counsel present during testing) ; Rev. Code of Wash. Ann. tit. 46, ch. 46.20.308(1) (warnings as to right of refusal, right to have second test administered by qualified person of driver's choice, loss of privilege to drive upon refusal).

[2] Although it is not a matter of record, we take judicial notice of the fact that the effect of the implied consent law in terms of license revocation is summarized at page 61 of the Pennsylvania Manual for Drivers, July 1973 ed., No. 95 0350-7200-0959, issued by the Secretary of Transportation, as follows: "Implied Consent Law for operating under the influence of alcohol: Any person who operates a motor vehicle or tractor in this Commonwealth shall be deemed

In addition to this consideration, it seems likely that as a matter of good police practice, normally warnings will be given in order to take full advantage of the coercive features of the law and to secure the best evidence on the issue of guilt or innocence. Knowledge that a refusal can lead to loss of one's license and that evidence of refusal may be admitted at trial will cause many drivers to submit to testing. The reason the General Assembly placed such consequences on a refusal was to compel drivers to submit to testing; the compulsion cannot operate effectively in the absence of warnings. Because a person "may refuse to cooperate for reasons other than a fear that the examination would yield evidence of guilt," a refusal is less reliable evidence on the question of guilt than the results a test would have yielded. Note, Constitutional Limitations on the Taking of Body Evidence, 78 Yale, L.J. 1074, 1083 (1969). *See also Commonwealth v. Robinson,* 229 Pa. Superior Ct. 131, 324 A. 2d 441 (1974). To secure the best evidence of guilt, police officers should act so as to encourage drivers to submit to testing, and warnings will serve that purpose.

Appellant suggests that warnings are required by constitutional considerations. We cannot agree. Neither the Fourth Amendment ban against unreasonable searches and seizures nor the Fifth Amendment privilege against self-incrimination prevents the Commonwealth from requiring that a driver submit to a breathalyzer test. *Commonwealth v. Quarles,* 229 Pa. Superior Ct. 363, 324 A. 2d 452 (1974) ; *Commonwealth v. Robinson, supra.* A driver therefore does not have a constitutional right to refuse. He has no right to refuse other than as provided in the implied consent law.

---

to have given consent to a chemical test of his breath for the purpose of determining the alcoholic content of his blood. Your refusal to submit to said test will cause your operating privileges to be suspended for six months to a year."

Neither the Fourth nor Fifth Amendments prevents the admission into evidence of test results or of refusal. *Id.* Since a driver has no constitutional right to refuse and no right to have evidence either of the test results or of the refusal excluded, we do not see how the Constitution requires that he be given warnings as to his lack of rights. As noted in *Newhouse v. Misterly,* 415 F. 2d 514, 518 (9th Cir. 1969), *cert. denied,* 397 U.S. 966 (1970), in concluding that a driver did not have to be told of his obligation to submit to testing: "An accused, taken into custody by the police, is under their direction and control and is expected to comply with constitutional directives. The directives could arise in a number of areas, and we decline to begin a process of compiling a catalog of circumstances where, although compliance with a directive is a duty of the prisoner, the police must first tell him so before the duty becomes operative. Compliance is the general rule, not the exception. It is, we think, enough to require that the prisoner be told in those cases where he has a right not to comply."

The judgment of sentence is affirmed.

WRIGHT, P. J., and SPAULDING, J., did not participate in the consideration or decision of this case.