375 A.2d 786

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Calvin B. TREFRY.**

Superior Court of Pennsylvania.

Argued Nov. 9, 1976.

Decided June 29, 1977.

Robert L. Eberhardt, Assistant District Attorney, and Robert E. Colville, District Attorney, Pittsburgh, submitted a brief for appellant.

John R. Walters, Jr., Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge.

This is an appeal from an order of the court below suppressing certain evidence. The Commonwealth alleges that, due to this order, it is "substantially handicapped because it cannot present *all* its available evidence." *Commonwealth v. Bosurgi*, 411 Pa. 56, 63, 190 A.2d 304, 308 (1963); *see also Commonwealth v. Deren*, 233 Pa.Super. 373, 337 A.2d 600 (1975). We reverse the order of the lower court.

On November 19, 1975, at approximately 2:17 a.m., appellee Calvin Trefry, driving an automobile on Route 8 in Hampton Township, Allegheny County, struck and killed Vicky Dean. Mr. Trefry apparently did not stop immediately after striking the victim, but proceeded approximately a quarter of a mile on Route 8, then turned off and continued for some distance, halting in a church driveway. Miss Dean's body was found in the driveway, approximately one-half mile from the alleged point of original impact.

The first officer to arrive on the scene was Lieutenant Lawrence J. Itri of the Hampton Township Police, who was off-duty but in uniform and wearing his badge. Lieutenant Itri saw Miss Dean's body lying in the driveway and two males, appellee and Daniel Beale, facing each other over the body. Mr. Beale, who had been Miss Dean's hitchhiking companion, accused appellee of striking Miss Dean down on the main highway, failing to stop, and dragging her body (on his automobile) to the place where it then rested. When asked by Lieutenant Itri if he had been driving the car that hit the victim, appellee responded in the affirmative. Lieutenant Itri observed that appellee's speech was slurred, he was staggering and he smelled strongly of alcohol. The officer told appellee he was under arrest for "hit and run," handcuffed him, and told him not to move.

Officer John Owens of the Hampton Township Police was one of the next arrivals at the scene. After being informed that Lieutenant Itri had placed appellee under arrest for "hit and run," Officer Owens took appellee back to his police car and advised him of his constitutional rights. Officer

Owens also noticed the odor of alcohol emanating from appellee, observed appellee's unsteady gait and slurred speech, and additionally noted that appellee had sustained no visible injuries. After placing appellee in the police car, Officer Owens examined appellee's automobile and found it to be severely damaged in the front. Blood spattered the roof and ran down the rear window. The interior of the car was littered with a number of empty beer cans.

Returning to his vehicle, Officer Owens transported appellee to the Hampton Township police station and again informed him of his constitutional rights. Appellee was asked to submit to either a breathalyzer test or a blood alcohol test. He refused both alternatives. Shortly after reaching the police station, Officer Owens received information that Vicky Dean had been pronounced dead on arrival at Passavant Hospital. At this time he informed appellee that he was under arrest for the additional offense of involuntary manslaughter. Appellee was once more requested to submit to a breathalyzer or blood alcohol test and again he declined.

Following appellee's second refusal of both alcohol tests, Officer Owens telephoned to Allegheny County Night Court in an effort to obtain a search warrant for the withdrawal of blood from Calvin Trefry. Officer Owens explained the circumstances to the magistrate on duty, who rejected the possibility of his issuing such a warrant, stating that he had never heard of a search warrant for blood. Officer Owens then telephoned the Allegheny County District Attorney's Office. An Assistant District Attorney listened to the officer's account of the situation and advised him to take appellee to Passavant Hospital and have a blood sample withdrawn. A blood sample was drawn from appellee at 3:55 a.m. by Peggy Wojcikiewicz, a medical technologist at Passavant Hospital.

Appellee was charged with failure to stop and give identification,[1] driving under the influence of liquor [2] and involun-

1. Act of April 29, 1959, P.L. 58, § 1027 (75 P.S. § 1027).

2. Act of April 29, 1959, P.L. 58, § 1037 (75 P.S. § 1037).

tary manslaughter.[3] A suppression hearing was held on February 23, 1976, and on March 10, 1976, the court entered an order suppressing the blood sample and chemical analysis thereof.

■ The court below suppressed the evidence of the blood test performed on appellee because it found his arrest illegal and the test tainted by the illegal arrest. Failure to stop at the scene of an accident, the offense for which appellee was initially placed under arrest, is a misdemeanor, as are driving under the influence of liquor and involuntary manslaughter, the other crimes with which he was later charged. It is well established that, absent statutory authorization, a law officer may only make a warrantless arrest for a misdemeanor when the offense is committed in his presence. *Commonwealth v. Reeves*, 223 Pa.Super. 51, 297 A.2d 142 (1972); *Commonwealth v. Vassiljev*, 218 Pa.Super. 215, 275 A.2d 852 (1971). This aspect of the law has led to problems in the prosecution of numerous drunken driving cases, some of which have involved other offenses such as involuntary manslaughter. Where a motorist has been arrested for driving under the influence when the officer has not seen him in the act of driving, a blood alcohol test has often been administered with or without the subject's consent. The results of such tests have been suppressed as incident to unlawful arrests. *See Commonwealth v. Kirkutis*, 234 Pa. Super. 18, 334 A.2d 682 (1975); *Commonwealth v. Quarles*, 229 Pa.Super. 363, 324 A.2d 452 (1974); *Commonwealth v. Brown*, 225 Pa.Super. 289, 302 A.2d 475 (1973); *Commonwealth v. Reeves, supra.*

Some highly anomalous results have occurred in this area, as in *Commonwealth v. Kriner*, 234 Pa.Super. 230, 338 A.2d 683 (1975). In that case, a borough police officer found a stationary automobile in the middle of a road with the motor running, the lights on and the transmission in "drive." The driver was unconscious at the wheel. For reasons of safety the borough officer turned off the car's ignition. As he was outside his jurisdiction and thus could not arrest, he radioed

**3.** 18 Pa.C.S. § 2504.

the Pennsylvania State Police, informing them of a "suspected 1037," or drunken driving violation. A state trooper arrived on the scene, determined that the driver was inebriated, arrested him for driving under the influence and transported him to the police barracks. There Kriner took a breathalyzer test, the results of which were admitted at trial. Our court, with Judges Watkins, Jacobs and Price dissenting, held the arrest illegal and suppressed all the resulting evidence. Because the borough police officer had, for Kriner's safety, turned off the ignition of his automobile, the majority found that the state trooper had not seen the offense committed and the misdemeanor arrest was therefore illegal.

In an effort to alleviate this problem the legislature amended section 1204[4] of The Vehicle Code, entitled "Arrests on view or with warrant", by adding the following sentence:

"A peace officer may, upon view or upon probable cause without a warrant, arrest any person violating section 1037 of this act [footnote omitted] in cases causing or contributing to an accident."[5]

An addition was subsequently made to Pa.R.Crim.P. 101, entitled "Means of Instituting Proceedings in Court Cases", in order that it harmonize with the statute. Rule 101 provides, in pertinent part:

"Criminal proceedings in court cases shall be instituted by:

. . . . .

4. an arrest without a warrant upon probable cause when the offense is a misdemeanor not committed in

4. Act of April 29, 1959, P.L. 58, § 1204 (75 P.S. § 1204).

5. As amended July 20, 1974, P.L. 522, No. 177, § 2. Our court has made reference to this amendment in several cases posing the problem we face in this appeal. See *Commonwealth v. Jones*, 242 Pa.Super. 471, 364 A.2d 368, 370 n.2 (1976); *Commonwealth v. Kelly*, 235 Pa.Super. 299, 301 n.2, 341 A.2d 141, 143 n.2 (1975); *Commonwealth v. Kriner*, 234 Pa.Super. 230, 234 n.4, 338 A.2d 683, 685 n.4 (1975); *Commonwealth v. McCarthy*, 234 Pa.Super. 363, 366 n.3, 338 A.2d 666, 667 n.3 (1975). The amendment was not controlling in these cases because their relevant events were prior to its enactment.

the presence of the police officer making the arrest, when such arrest without a warrant is specifically authorized by statute." [6]

*Commonwealth v. Levesque*, 469 Pa. 118, 364 A.2d 932 (1976), involved the warrantless arrest of a motorist, who had been involved in an accident, for violation of section 1037 (drunken driving) by an officer who did not see the driver operating his vehicle. The date of the arrest was subsequent to the amendment of 75 P.S. § 1204 but prior to the addition of number 4 to Pa.R.Crim.P. 101. The Supreme Court of Pennsylvania held that the arrest under section 1204 was legal although Rule 101 had not been changed, at that time, to provide for the initiation of criminal proceedings following such an arrest. The Court found no conflict between the statute and the rule because "when Rule 101 was promulgated, a warrantless arrest for a misdemeanor not committed within the view of the arresting officer was not within the contemplation of the rule." *Commonwealth v. Levesque, supra* 469 Pa. at 125, 364 A.2d at 935. Providing for the warrantless arrest and subsequent prosecution of a section 1037 violator by an officer who has not seen the offense committed is the evident objective of both 75 P.S. § 1204 and Pa.R.Crim.P. 101(4). In *Levesque, supra,* our Supreme Court upheld the legality of these provisions and the procedure they afford. Under section 1204 and Rule 101(4), both pertinent to the instant case, appellee's arrest was clearly legal.

It is clear that Lieutenant Itri and Officer Owens had probable cause to arrest appellee for violation of 75 P.S. § 1037, driving under the influence of alcohol, as well as for leaving the scene of an accident. The test for probable cause to arrest is "whether there were facts available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator. (citations omitted)." *Commonwealth v. Jones,*

**6.** Section 4 was appended to the Rule on June 30, 1975, effective September 1, 1975, and is thus applicable to the instant case.

457 Pa. 423, 428, 322 A.2d 119, 123 (1974). Here, both officers smelled alcohol on appellee's breath and observed his disheveled appearance, unsteady walk and slurred speech. Officer Owens saw numerous beer cans in the interior of appellee's automobile. Finally, appellee admitted to Lieutenant Itri that he had been driving his vehicle and had struck Miss Dean. Probable cause for a section 1037 arrest was thus indisputably present.

 It is further apparent that the situation involved an accident. Not only was Miss Dean struck and killed, but appellee incurred extensive damage to his automobile. The statute, 75 P.S. § 1204, provides for the warrantless arrest, upon probable cause, of any person "violating" section 1037 where an accident has occurred. It is obvious that appellee violated section 1037 and that Officers Itri and Owens were cognizant of this violation. All the requisite elements for a proper warrantless arrest under section 1204 were present. Appellee was later charged with violation of section 1037 and will be tried for that offense. I find nothing in the facts to remove this case from the ambit of the statute. I would not hold appellee's arrest illegal merely because he was initially informed that his arrest was for leaving the scene of an accident. Appellee suffered no prejudice from the failure of the police to inform him, at the scene, that he was also being charged with driving under the influence. Under the circumstances, he must have been aware of the virtual certainty that such a charge would be brought. This case presents exactly the type of situation for which the amendment to section 1204 was intended. Appellee's arrest was legal and proper under that statute.

It is next necessary to examine the constitutionality of the procedure employed to secure a sample of appellee's blood. Blood was drawn from appellee without his consent and without a warrant. The seminal case in this area is *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Schmerber was arrested at a hospital following an automobile accident in which he received injuries. The warrantless arrest was legal under California law. A blood

sample was taken without his consent and without a warrant. The United States Supreme Court found that the procedure utilized had not, under the circumstances of the case, violated either Schmerber's Fifth Amendment right against self-incrimination or his Fourth Amendment right to be free from unreasonable searches. This result was based on three principal considerations: (1) the legality of the arrest; (2) the exigency of the circumstances necessitating the "search," and (3) the reasonableness of the method employed to secure the blood sample. The Court took notice of the fact that the percentage of alcohol in the bloodstream diminishes rapidly after drinking ceases. Faced with quickly disappearing evidence, the officer involved had no time to seek out a magistrate and obtain a warrant. It was also noted that a blood alcohol test is the most reliable method of determining intoxication. Finally, the Court found that the drawing of blood in a hospital by trained medical personnel was a reasonable procedure.

In *Commonwealth v. Murray*, 441 Pa. 22, 271 A.2d 500 (1970), our Supreme Court recognized that the warrantless taking of a blood sample was a search which, when incident to a legal arrest, could be justified under certain circumstances. It suppressed the results of the blood test, taken under conditions similar to those in *Schmerber*, however, because Murray had not been under arrest when the test was performed. In numerous cases subsequent to *Murray, supra*, invalid misdemeanor arrests, effected by an arresting officer who had not observed the actual criminal conduct, led to the suppression of blood test results. *Commonwealth v. Brown, supra, Commonwealth v. Reeves, supra.*

Appellee contends that the right to refuse a chemical test of intoxication, as incorporated in section 624.1[7] of The Vehicle Code, renders the results of his blood test inadmissible. Subsection (a) provides, *inter alia*, as follows:

7. This section was added to The Vehicle Code by the Act of July 28, 1961, P.L. 918, § 1, *as amended* July 31, 1968, P.L. 758, No. 237, § 1 (75 P.S. § 624.1).

"If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing."

This provision has been the subject of extensive analysis in several recent cases. In *Commonwealth v. Wolpert*, 224 Pa.Super. 361, 308 A.2d 120 (1973), the appellant was driving a car which crashed into a light standard. Although the officer who arrived on the scene detected a strong odor of alcohol, the appellant was not then arrested. At the hospital, where he was being treated for injuries sustained in the accident, a blood test was performed without the appellant's consent. The results of the test were admitted at trial, which culminated in conviction. On appeal, the Commonwealth contended that because the statute provided only arrested drivers with a right to refuse testing, the testing of drivers prior to arrest, with or without actual consent, was impliedly legitimized. It was held that the right to refuse a chemical test for intoxication under section 624.1 was applicable in all drunk driving cases, regardless of whether or not the driver was under arrest when the test was sought. Because the implied consent statute provided no independent authority for a nonconsensual test, suppression was dictated by existing case law. As the driver was not under arrest when his blood was taken, *Commonwealth v. Murray, supra*, required suppression of the test results. It is important to note that suppression was not premised on a violation of the driver's right to refuse testing under section 624.1. A question specifically not decided was whether section 624.1 entirely superseded the statements in *Murray* concerning tests incident to lawful arrests. *Commonwealth v. Wolpert, supra*, 224 Pa.Super. at 371 n.7, 308 A.2d at 126 n.7.

The implied consent provisions received further close examination in *Commonwealth v. Quarles*, 229 Pa.Super. 363, 324 A.2d 452 (1974). In that case, the appellant was the

driver of one of the cars involved in a two car accident. State police officers arrived on the scene, determined that Quarles was intoxicated, arrested him and transported him twenty-two miles to a state police barracks, where he submitted to a breathalyzer test. The warrantless arrest for a misdemeanor not viewed by the officers was illegal, but the Commonwealth maintained that section 624.1 provided a constitutional basis for the seizure, transportation and subsequent testing of the driver. The court, in an opinion by Judge Spaeth,[8] rejected this contention, concluding that "[t]o transport a person to a place where a test of his blood or breath will be conducted, a lawful arrest is required . . ." *Id.* 229 Pa.Super. at 389–90, 324 A.2d at 466. It is significant, however, that the court in *Quarles* recognized the continued viability of the holding in *Commonwealth v. Murray, supra,* commenting that "the Commonwealth is not totally disabled from procuring evidence of intoxication by reliance on the traditional exceptions to the warrant requirements of the Fourth Amendment. *See, e. g., Commonwealth v. Murray, supra." Commonwealth v. Quarles, supra,* 229 Pa.Super. at 381, 324 A.2d at 462. Authority thus persists under *Murray,* for a lawful, nonconsensual blood test, incident to a legal arrest and under emergency circumstances, despite the statutory right of refusal incorporated in 75 P.S. § 624.1.

There are several reasons why, on the instant facts and in similar cases, the possibility of a lawful blood test, without consent and without a warrant, should not be foreclosed. First, the result of a test for intoxication is much stronger evidence than refusal to take the test. *See Commonwealth v. Robinson,* 229 Pa.Super. 131, 148–49, 324 A.2d 441, 451 (1974); *Commonwealth v. Rutan,* 229 Pa.Super. 400, 403, 323 A.2d 730, 732 (1974). This is especially true in a case where evidence of intoxication is relevant to proof of another crime in addition to drunken driving, as it is relevant to the charge of involuntary manslaughter in this appeal. Second, license suspension, the sanction available to

8. Watkins, P. J., and Hoffman and Cercone, JJ., concurred in the result. Wright, P. J. and Spaulding, J., did not participate.

the Commonwealth where a test is refused (in addition to the admissibility of the refusal), while highly appropriate in a drunk driving case, is useless to the Commonwealth in an involuntary manslaughter prosecution.[9]

Finally, even assuming that the drawing of blood in this case violated appellee's statutory right to refuse testing under 75 P.S. § 624.1, the remedy for violation of this right would not be suppression of the evidence. In *Commonwealth v. Rutan, supra,* the court stated:

"Neither the Fourth Amendment ban against unreasonable searches and seizures nor the Fifth Amendment privilege against self-incrimination prevents the Commonwealth from requiring that a driver submit to a breathalyzer test. *Commonwealth v. Quarles,* 229 Pa.Super. 363, 324 A.2d 452 (1974); *Commonwealth v. Robinson, supra.* A driver therefore does not have a constitutional right to refuse. He has no right to refuse other than as provided in the implied consent law. Neither the Fourth nor Fifth Amendments prevents the admission into evidence of test results or of refusal. *Id.* . . . a driver has no constitutional right to have evidence either of the test results or of the refusal excluded . . . ." *Id.* 229 Pa.Super. at 403–04, 323 A.2d at 732.

Under circumstances consonant with *Schmerber* and *Murray,* as are those in this appeal, a driver is correspondingly without a *constitutional* basis upon which to have the results of a blood test excluded. The remedy of suppression is thus not applicable.

It is clear that the nonconsensual blood test administered in this case met the requirements of *Schmerber* and *Murray.* Appellee was under legal arrest for several offenses, including involuntary manslaughter, and refused consent to any

---

**9.** It has been held that "the automatic suspension feature of Section 624.1(a) of The Vehicle Code is applicable only to refusal to submit to a chemical breath test, not to the drawing of blood. See discussion in *Commonwealth v. Smith, Jr.,* 6 Pa.Cmwlth.Ct. 78, 293 A.2d 158 (1972)." *Commonwealth v. Brown,* 225 Pa.Super. 289, 293, 302 A.2d 475, 477 (1973). In the instant case, however, appellee refused both a chemical breath test and the drawing of blood.

test to determine the amount of alcohol in his system. The police had attempted to secure a warrant to draw blood, and had been refused. The evanescent nature of such evidence, due to the rapid dissipation of alcohol in the bloodstream, has been noted, and cases such as *Schmerber* and *Murray* have recognized the exigency of testing as quickly as possible. The reasonableness of the testing procedure utilized herein cannot be questioned. Blood was drawn in a hospital by a medical technician, minimizing any possible health hazard or discomfort.

Appellee advances one additional argument, citing *Commonwealth v. Hartman,* 383 Pa. 461, 119 A.2d 211 (1956), for the proposition that the delay of one and a half hours between his arrest and the taking of blood rendered the test results unreliable as an indicator of his condition on arrest. That case is inapposite. *Hartman* involved the decision of a trial judge to grant a new trial based on *his perception* of the uncertainty of the testing evidence. The trial judge's exercise of discretion in this regard was upheld, but the case did not involve any determination by our Supreme Court in regard to the validity of testing for intoxication. It should be noted that 75 P.S. § 624.1, which provides for tests of intoxication, does not mention any time period within which such tests must be performed. At trial, the results of a test, as indicative of intoxication at a relevant point in time, may be attacked or contradicted by any competent evidence.[10] The weight to be accorded test results then properly rests with the finder of fact.

The order of the lower court suppressing the results of appellee's blood test is reversed and the case is remanded for trial.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

[10]. Section 624.1(d) provides as follows:
"The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating liquor."

HOFFMAN, Judge, dissenting:

The Commonwealth appeals from the lower court's order suppressing evidence of a blood sample taken from appellee and of a chemical analysis of that sample. I believe that we should quash the Commonwealth's appeal because the suppression order does not effectively terminate or substantially handicap the Commonwealth's case against appellee.

Allegheny County officials charged appellee with driving under the influence of liquor,[1] involuntary manslaughter,[2] and failure to stop and give identification after an accident.[3] Appellee filed an application to suppress evidence of a blood sample removed from his body and of a chemical analysis of that sample.[4] On February 23, 1976, the lower court conducted a hearing on appellee's application, and on March 10, 1976, the lower court entered an order suppressing the blood sample and the chemical analysis. The Commonwealth then filed this appeal.

The Majority reaches the merits in the instant case, but I believe that the Commonwealth is not entitled to appeal the lower court's suppression order. In *Commonwealth v. DeFelice*, 248 Pa.Super. 516, 375 A.2d 360 (1977), our Court today articulates the rules governing appellate court jurisdiction when the Commonwealth appeals from a lower court's suppression order: "The Commonwealth may only appeal from a pre-trial order if it involves a pure question of law and if it effectively terminates or substantially handicaps a prosecution." See also *Commonwealth v. Barnett*, 471 Pa. 34, 369 A.2d 1180 (1977); *Commonwealth v. Ray*, 448 Pa. 307, 292 A.2d 410 (1972); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963). In *DeFelice*, the lower court suppressed an out-of-court identification of appellee. However, the Commonwealth still could introduce

1. Act of April 29, 1959, P.L. 58, § 1037; 75 P.S. § 1037.

2. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 2504.

3. Act of April 29, 1959, P.L. 58, § 1027; 75 P.S. § 1027.

4. Rule 323, Pa.R.Crim.P.; 19 P.S. Appendix.

appellee's confession, possible in-court identification by two eyewitnesses, and the fruits of the robbery. Therefore, a Majority of our Court quashes the Commonwealth appeal because the lower court's suppression order did not effectively terminate or substantially hamper the prosecution.

In *Commonwealth v. Kloch,* 221 Pa.Super. 324, 292 A.2d 479 (1972), the Commonwealth charged appellee with driving under the influence of liquor. The lower court suppressed the results of a blood alcohol test. However, the Commonwealth still had ample evidence to convict appellee of driving while intoxicated. A police officer found appellee asleep or unconscious in his car which was stopped on the shoulder of the road with the motor running. He noted a strong odor of alcohol emanating from appellee. Moreover, appellee had difficulty producing his vehicle registration and failed certain field sobriety tests. Because the Commonwealth's prosecution was not effectively terminated or substantially hampered by the lower court's suppression order, we quashed the appeal.

In the instant case, the Commonwealth can still marshall the following evidence in order to prove that appellee drove while intoxicated and that he hit and killed the victim. The police officer who first arrived on the accident scene testified at the suppression hearing that: "From my point of view, his speech was slurred. I could smell the content of alcohol all over. He was staggering, . . ." Appellee admitted to this police officer that he drove the car that hit the victim; a hitchhiking companion of the deceased confirmed appellee's admission.

Another police officer testified that he arrived at the scene shortly after the accident. He asserted that appellee's appearance was somewhat disheveled, his walk unsteady, and his speech slurred. Moreover, the police officer "could smell the impurities of alcohol" on appellee's breath. As a police officer with several years experience, he opined that appellee was under the influence of alcohol. When this police officer examined appellee's vehicle, he found blood on

top of the car and dripping down the back windshield; the front of the car was severely damaged. The police officer also discovered twelve empty Rolling Rock beer cans in appellee's car. When this police officer asked appellee how much he had had to drink, appellee responded that he guessed that he had imbibed too much. Finally, when the police officer asked appellee if he would submit to a blood alcohol test or a breathalyzer test, appellee refused to take either. After the police transported appellee to a nearby hospital for purposes of withdrawing a sample of his blood, appellee reiterated his objection to having his blood removed. The Commonwealth could introduce evidence of appellee's refusal to submit to this test at a criminal trial.[5]

I believe that the Majority's holding in the case at bar is, quite simply, irreconcilable with our Court's decision in *Commonwealth v. DeFelice*, decided today, and *Commonwealth v. Kloch*, supra.[6] The Commonwealth can still ad-

5. Act of April 29, 1959, P.L. 58, § 624.1, added 1961, July 28, P.L. 918, § 1, as amended 1968, July 31, P.L. 758, No. 237, § 1; 1969, Dec. 22, P.L. 392, § 1; 75 P.S. § 624.1(h). 75 P.S. § 624.1(h) provides: "The refusal to submit to a chemical test may be admitted into evidence as a factor to be considered in determining innocence or guilt."

6. I do not agree with the Majority that *Commonwealth v. Deren*, 233 Pa.Super. 373, 337 A.2d 600 (1975), governs this case. *Deren* stands for the proposition that we will not quash an appeal *sua sponte* simply because the Commonwealth has not certified that it will be "substantially handicapped" if we can determine from a review of the evidence available to the Commonwealth that its prosecution will indeed be substantially hampered. In the instant case, it is clear that the Commonwealth will not be substantially handicapped. *Commonwealth v. Barkley*, 234 Pa.Super. 503, 341 A.2d 192 (1975), is also distinguishable. In *Barkley*, a police officer observed appellee "weaving" on the Pennsylvania Turnpike. The police officer directed appellee to pull his car off the road. When the police officer attempted to interview appellee, he noticed that appellee's breath smelled of alcohol, that he had slurred speech, that his eyes were glassy and that he staggered when asked to walk. The officer then arrested appellee for driving under the influence of intoxicating liquor. Subsequently, a breathalyzer test was administered. The lower court suppressed all evidence obtained after the police officer directed appellee to pull his car off the road. Consequently, the Commonwealth could only introduce evidence that appellee "weaved" on the Pennsylvania Turnpike; the lower court's suppression order effectively terminated the prosecution.

134

duce abundant evidence of appellant's intoxication including appellant's own admission that he had had too much to drink, his refusal to take a blood alcohol or breathalyzer test, the discovery of twelve empty beer cans in appellee's car, and the observations of two police officers who asserted that appellee smelled of alcohol, staggered and slurred his words.[7] I do not believe that the lower court's suppression order effectively terminates or substantially handicaps the prosecution of appellee's case. Therefore, I would quash this appeal.

SPAETH, J., joins in this dissenting opinion.

7. I note that the Commonwealth traditionally had little difficulty in obtaining convictions for driving under the influence of liquor prior to the relatively recent use of breathalyzer and blood alcohol tests.