## Commonwealth v. Gadley

152

*Timothy P. Morris, assistant district attorney,* for the commonwealth.

*Beth Ammerman,* for defendant.

SNYDER, *P.J.,* November 21, 1988—And now, November 21, 1988, after evidentiary hearing on defendant's application to suppress blood test and quash information, and consideration of the briefs of law filed herein, we make the following

## FINDINGS OF FACT

(1) On May 20, 1988, about 11:30 p.m., Officer Thomas S. Perry of the Brookville Borough Police, with probable cause, arrested defendant for operating a motor vehicle while under the influence of alcohol.

(2) Defendant was not involved in an accident, nor was anyone injured or killed.

(3) Officer Perry transported defendant to the Brookville Borough Police Station for an intoxilyzer test to determine defendant's blood alcohol content.

(4) Defendant twice refused to submit to the intoxilyzer test.

(5) Officer Perry then had defendant transported to the Brookville Hospital to have a sample of blood removed from defendant's body to determine his blood alcohol content.

(6) At the hospital defendant refused to sign the police consent form authorizing the withdrawal of blood, but did sign a consent form presented by hospital personnel.

(7) The blood sample revealed that the defendant's blood alcohol level at the time the blood was drawn was .30 percent.

(8) On May 25, 1988, Officer Perry filed a criminal complaint against defendant charging him with violating section 3731(a)(4) of the Motor Vehicle Code, i.e., driving a vehicle while under the influence of alcohol while his blood alcohol content was .10 percent or greater. No other charges have been filed against defendant.

## DISCUSSION

The issue raised here is this: Where a driver of a motor vehicle, not involved in any type of accident, is lawfully arrested for driving under the influence and is then asked to submit to a blood alcohol test called for in the implied consent law, and the driver exercises his right to refuse to submit to such a test, does this refusal preclude an otherwise constitutionally permissible extraction of a blood sample from the driver's body to obtain evidence to prosecute a charge of operating a motor vehicle while the amount of alcohol by weight in the blood of the driver was .10 percent or greater?

Insofar as we are aware there are no reported cases which have considered this precise question. We observe, though, that there are cases which have held in situations where there has been an accident, injury, or death, and charges other than just driving while under the influence have been filed, that the right of refusal under the implied consent law does not foreclose the opportunity to extract a

blood sample to determine blood alcohol content. See *Commonwealth v. Cieri,* 346 Pa. Super. 77, 499 A.2d 317 (1985); *Commonwealth v. Pelkey,* 349 Pa. Super. 373, 503 A.2d 414 (1985); *Commonwealth v. DeFaveri,* 352 Pa. Super. 96, 507 A.2d 398 (1986).

Defendant contends that *Commonwealth v. DeFaveri, supra,* is in fact dispositive of the case sub judice. In *DeFaveri,* defendant was charged with recklessly endangering another person, driving under the influence of alcohol, homicide by vehicle, involuntary manslaughter and reckless driving. The charges stemmed from a head-on collision in which two persons were killed and defendant injured. DeFaveri was taken to the hospital where, after he was arrested, a blood sample was taken without his consent. The resulting test revealed a blood alcohol content of .33 percent. Defendant moved to suppress the results of the blood test at trial. The Superior Court held that the test results of the blood sample were admissible, and then went on to say:

"The right to revoke implied consent, as prescribed by section 1547(b)(1), is directed at motorists arrested for driving under the influence. Then and only then may a driver refuse to submit to chemical testing. Section 1547(b)(1)'s right of refusal is limited to those situations in which there has been no serious accident, no one injured and no one killed." 352 Pa. Super. at 103, 507 A.2d at 401. Defendant's argument is that since in his case there was no serious accident, nor anyone injured or killed, and since the only charge brought against him was that of operating a motor vehicle while his blood alcohol content was .10 percent or greater, the right of refusal provided in section 547(b)(1) entirely prohibits the taking of a blood sample from him. We disagree.

First, we are quite certain that but for any possible effect which section 1547(b)(1) may have on the question stated, the taking of defendant's blood sample in this case was clearly permissible. Defendant makes no argument to the contrary. The taking was a search incident to a lawful arrest, under the authority of *Commonwealth v. Murray,* 441 Pa. 22, 271 A.2d 500 (1970), the Pennsylvania Supreme Court case that followed the U. S. Supreme Court decision in *Schmerber v. California,* 384 U.S. 757 (1968). In *Schmerber,* the Supreme Court held that the warrantless taking of a blood sample from a person under arrest to determine that person's blood alcohol content is valid as a search incident to arrest if done substantially contemporaneous with the arrest and in a medically safe manner. *Id.* at 771. *Murray,* in turn, held that the person of an individual may lawfully be searched if the search is conducted incident to a lawful arrest, substantially contemporaneous with the arrest and confined to the immediate vicinity thereof. 441 Pa. at 25, 271 A.2d at 501. The search at issue here was conducted shortly after the arrest was made, and the blood was removed by hospital personnel.

Recognizing, then, the underlying validity of the search, the question then becomes whether the right of refusal contained in the statutory implied consent law entirely supersedes *Murray* concerning tests incident to lawful arrests. We do not believe that it does.

In *Commonwealth v. Trefry,* 249 Pa. Super. 117, 375 A.2d 786 (1977), the Superior Court construed *Murray* to allow such searches, despite the statutory right to refuse. In *Trefry,* defendant struck and killed a hitchhiker. He was subsequently charged with driving under the influence and involuntary

manslaughter. Upon his arrest, defendant refused to submit to chemical testing and the arresting officer attempted to obtain a search warrant for the withdrawal of blood. The magistrate refused to issue the warrant, stating that he had never heard of a search warrant for blood. The blood was then drawn under the advice of an assistant district attorney. In ruling that the withdrawal of blood was permissible, the Superior Court stated:

"It is significant, however, that the court in *[Commonwealth v.] Quarles* [229 Pa. Super. 363, 324 A.2d 452 (1974)] recognized the continued viability of the holding in *Commonwealth v. Murray,* . . . commenting that 'the commonwealth is not totally disabled from procuring evidence of intoxication by reliance on the traditional exceptions to the warrant requirements of the Fourth Amendment. See e.g., *Commonwealth v. Murray* . . .' Authority thus persists under *Murray* for a lawful, non-consentual blood test, incident to a legal arrest and under emergency circumstances, despite the statutory right of refusal. . . ." 249 Pa. Super. at 128, 375 A.2d at 792 (citations omitted).

That the court had strong convictions on the matter is apparent in that the opinion did not end there:

"Finally, even assuming that the drawing of blood in this case violated appellee's statutory right to refuse . . ., the remedy for violation of this right would not be suppression of the evidence. In *Commonwealth v. Rutan,* [229 Pa. Super. 400, 323 A.2d 730 (1974)] the court stated:

" 'Neither the Fourth Amendment ban against unreasonable searches and seizures nor the Fifth Amendment privilege against self-incrimination prevents the commonwealth from requiring that a driver submit to a breathalyzer test. . . . A driver therefore does not have a constitutional right to

refuse. He has no right to refuse other than as provided in the implied consent law. Neither the Fourth nor the Fifth Amendment prevents the admission into evidence of test results or of refusal . . . a driver has no constitutional right to have evidence of the test results or of the refusal excluded . . .'

"Under circumstances consonant with *Schmerber* and *Murray*, . . . a driver is correspondingly without a *constitutional* basis upon which to have the results of a blood test excluded. The remedy of suppression is thus not applicable." 249 Pa. Super. at 129, 375 A.2d at 792-3 (citations omitted) (emphasis in original).

It is this court's view, therefore, that the statement of the Superior Court in *DeFaveri* limiting the right to refuse chemical testing to persons arrested for driving under the influence is not to be read as superseding the conclusion in *Murray* concerning tests incident to lawful arrests. If *DeFaveri* is read as defendant argues it should be read, the result would be that a refusal to submit to chemical testing would, in effect, foreclose any opportunity for the arresting officer to obtain the evidence necessary to prosecute a driver under section 3731(a)(4) of the Vehicle Code. Consider the following scenario: Officer A observes Driver B operating a vehicle with an equipment violation. Officer A stops Driver B and in the course of obtaining Driver B's registration card and license, he detects the odor of alcohol on Driver B's breath and observes several empty beer cans on the floor of the car. Officer A conducts a field sobriety test on Driver B, who does not perform it well. In addition, Driver B's speech is slurred and his eyes are bloodshot. Probable cause exists for Officer A to arrest Driver B for operating a motor vehicle while under the influence, but there is no evidence of

unsafe driving. Further, Driver B refuses to submit to a chemical test. Without the opportunity to obtain a blood alcohol test, Officer A has very little chance to prosecute.

Section 3731(a)(4) provides that:

"A person shall not drive, operate or be in actual physical control of the movement of any vehicle while . . . (4) the amount of alcohol by weight in the blood of the person is 0.10 percent or greater." 75 Pa.C.S. §3731, as amended 1982, P.L. 1268, §9; 1984, P.L. 53, §5; 1984, P.L. 704, §1; 1986, P.L. 158, §1 (Purd. Supp. 1988).

This provision was specifically added to the existing drunk driving law by amendment in 1982. There was an obvious determination by the legislature on behalf of the people of the commonwealth that it is a criminal offense merely to operate a motor vehicle on a public highway while the alcohol content in the blood by weight is 0.10 percent or greater. No longer would it be necessary to prove that the operator was under the influence to a degree which rendered him incapable of safe driving. If defendant's argument in the case at hand is carried to its logical conclusion, once a driver refuses the chemical test, there is no way to obtain the evidence to enforce section 3731(a)(4) unless an accident has also occurred. We do not believe the legislature intended such a limitation on enforcing section 3731(a)(4). On the contrary, the stated[1] intent of the amendment was to increase highway safety by deterring people from driving under the influence by making it easier for police to make an arrest, and by increasing the likelihood that an of-

1. *Governor's DUI Task Force Report,* Pa. Department of Transportation, October 1982.

fender would be punished and provided treatment once arrested.[2]

We recognize, of course, that refusing to submit to the chemical test under the implied consent law carries its own punishment. Under the law, if a driver refuses to consent, his driver's license is revoked for 12 months. 75 Pa.C.S. §1547(b)(1), as amended 1982, P.L. 1268, §5; 1984, P.L. 53, §2 (Purd. Supp. 1988). Bearing this in mind, it must nevertheless be noted that the implied consent law is not penal in nature. *Hando v. Commonwealth*, 84 Pa. Commw. 63, 70, 478 A.2d 932, 936 (1978). Suspension of a driver's license is a civil remedy. Nothing in the existing case law suggests that the availability of this civil remedy was meant to block a criminal prosecution. Evidence of the refusal is admissible into evidence at trial by express provision of the implied consent law, 75 Pa.C.S. §1547(e), but such evidence is useless in a prosecution under section 3731(a)(4). It is inconceivable that the legislature intended only to enable prosecution under section 3731(a)(4) of those drivers who unwittingly submit to the test.

There is no suggestion in the Vehicle Code or in the available case law that section 3731(a)(4) was meant to be a fruitless exercise in sematics. There is likewise no suggestion that this provision was meant to be enforceable only in conjunction with a serious accident. Public policy considerations also point to a different conclusion. With the proliferation of anti-drunk driving groups, society has brought into sharp focus the serious problem that

2. *The Effort to Reduce Drunken Driving in Pennsylvania: The Effects on the Criminal Justice System and Highway Safety*, 3 The Justice Analyst, Pennsylvania Commission on Crime and Delinquency 1 at 1.

exists on the public highways. In answer to this concern, the legislature has enacted specific provisions in order to combat drunk drivers. The law has provided a solution; society should not be forced to wait until a drunken driver actually injures, maims, or kills someone before the police are able to enforce the law.

## CONCLUSION

In light of the discussion above, we conclude that the right to refuse to take the test called for in the implied consent law does not preclude requiring such a test to be performed if it can be performed as a constitutionally permissible search incident to an arrest.

## ORDER

And now, November 21, 1988, defendant's application to suppress blood test and quash information is denied.