385 A.2d 995

**COMMONWEALTH of Pennsylvania**

v.

**Richard J. FUNK, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1976.

Decided April 13, 1978.

Michael J. Perczous, Lancaster, for appellant.

D. Richard Eckman, District Attorney, Lancaster, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from judgment of sentence for driving while under the influence of alcohol. The Vehicle Code, Act

of Apr. 29, 1959, P.L. 58 § 1037, eff. July 14, 1974, 75 P.S. § 1307 (currently, Act of June 17, 1976, P.L. 162, Act No. 81 as amended, eff. July 1, 1977, 75 Pa.C.S.A. § 3731).

On October 26, 1974, at about 10:56 p. m., appellant was involved in a two-car collision. He was pinned behind the steering wheel of his car for 45 minutes, during which time he appeared unconscious to an investigating police officer, but received treatment from an ambulance crew. After being freed from his car, appellant was taken to a hospital. There, at about 12:45 a. m. he was questioned by two officers, who also testified that he was passing in and out of consciousness. Appellant told the officers, "Show me the intersection and I'll show you who had the right of way." Both officers smelled alcohol on appellant. They asked appellant to submit to a blood test, telling him that the purpose was to determine the alcoholic content, and appellant replied, "Yes, you have me anyway." While a consent form was being prepared, appellant passed out again and could not be aroused. A doctor took blood for the test (which later showed appellant to have been legally intoxicated), but appellant did not sign the consent form, nor did he have any knowledge of its content. He was given no *Miranda*-type warnings, nor was he told he had the right to refuse to submit to the blood test. Some days later appellant refused to sign the consent form. Before trial, appellant filed a motion to suppress the results of the blood test. The motion was denied, and that is the basis of this appeal.

The provisions for the taking of a breathalyzer or blood test are set out in The Vehicle Code, *supra*, § 624.1 (§ 1547 of the current Code, *supra*), and read as follows:

(a) Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence

of intoxicating liquor. Qualified personnel means a physician or a police officer who has received training in the use of such equipment in a training program approved by the secretary. If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons.

.    .    .    .    .

(f) If for any reason a person is physically unable to supply enough breath to complete a chemical test a physician or a technician acting under his direction may withdraw blood for the purpose of determining the alcoholic content therein. Consent is hereby given by such persons. The chemical analysis of the blood taken under these circumstances shall be admissible in evidence.

.    .    .    .    .

(h) The refusal to submit to a chemical test may be admitted into evidence as a factor to be considered in determining innocence or guilt.

A substantial gloss has been put on these provisions. In *Commonwealth v. Wolpert*, 225 Pa.Super. 361, 308 A.2d 120 (1973), we held that the right to refuse a breathalyzer or blood test (with the consequences of possible license suspension and admission of the refusal at trial as a fact to be considered in determining guilt or innocence) must be extended to all persons suspected of drunken driving, not just to those who have formally been arrested, as the statute on its face might appear to imply. In *Commonwealth v. Quarles*, 229 Pa.Super. 363, 324 A.2d 452 (1974), we held that it was unconstitutional to condition the right to drive a car on consent to a blood or breath test, and that for the choice

of taking the test or refusing it and suffering the consequences to become operable, there must be probable cause to believe that the suspect had been driving while intoxicated. When there is probable cause, we held, the blood test may be administered on the spot, but if the suspect must be transported to another place for the test to be administered, a lawful arrest is required.

–1–

First appellant argues that there was no probable cause to believe that he was driving while intoxicated. The odor of alcohol alone, he says, was not enough. While we might agree with appellant if the odor of alcohol were all the evidence the officers had, in fact they had more than that. One officer testified that appellant was "stuporous" at the time the blood was taken, N.T. 46. While a medical doctor testified that the stupor was consistent with appellant's being either intoxicated or suffering from a concussion, N.T. 28, there was the possibility of either. The "strong" odor, N.T. 13, of alcohol was still evident almost two hours after the accident. Furthermore, there *had been* an accident; while not strongly probative, this fact is corroborative of the other evidence of driving while intoxicated; it is not as if the police simply stopped appellant while he was driving along safely and came to their conclusion based on an odor of alcohol. In these circumstances we conclude that the police had probable cause to request a blood or breath test.

–2–

Next appellant argues that even if the police had probable cause to request a test, there was no evidence that entitled them to a *blood* test instead of a breathalyzer test, a blood test being more of an intrusion, *Commonwealth v. Quarles, supra,* 229 Pa.Super. at 387, 324 A.2d at 465. While it is true that the Commonwealth did not introduce any evidence specifically proving that appellant was "physically unable to supply enough breath to complete a chemical test,"

The Vehicle Code, *supra*, we shall not require such proof. The lower court put a gloss of "reasonableness" on the Code, and we agree: the decision to take a blood sample, the less desirable alternative, will not be faulted where there is a reasonable basis for believing that a driver in a precarious medical condition will not be able to summon enough breath to complete a breathalyzer test. Here, appellant had been in a serious automobile accident. He was passing in and out of consciousness; it was possible that he had suffered a concussion; he was stuporous. In these circumstances the police decision to request a blood sample rather than a breathalyzer test was reasonable.

–3–

Finally, appellant argues that the blood test should have been suppressed because he did not voluntarily and intelligently consent to it.

Where the defendant's consent is voluntary and intelligent, an illegal application of the blood test provisions of The Code will have been waived. *Commonwealth v. Watkins*, 236 Pa.Super. 397, 344 A.2d 678 (1975). Appellant argues that his consent was not voluntary and intelligent, and consequently, that illegal application of The Code was not waived. However, since we have held above that The Code was not illegally applied * we do not need to consider this argument except in one limited sense. Under The Code, as interpreted in *Commonwealth v. Wolpert, supra,* appellant was entitled to the opportunity to choose between (1) having a test taken, and (2) refusing to have a test taken and risking loss of license and the admission at trial of the fact of refusal as a fact relevant to guilt or innocence. We have serious doubt that appellant voluntarily and intelligently made *that limited choice.* He was stuporous when he was conscious (whether from alcohol or from a concussion), N.T. 28, 34; "[h]e did not respond to questions quickly, quite

---

* We note in this regard that the medical doctor who performed the blood test testified that he withdrew appellant's blood in the usual manner, using a standard kit. N.T. 26.

slowly", N.T. 28; he was passing in and out of consciousness, N.T. 8, 48; "The typical picture you see from someone suffering from a concussion who is unable to think clearly?", N.T. 36 (question phrased by appellant's counsel, to which expert witness, a doctor, replied, "That is true."); possibly he was sedated, N.T. 6; and at the time blood was drawn he had become incoherent, and then had passed out, N.T. 48.

We cannot ignore this evidence that appellant's consent to the test—his exercise of the limited choice presented by the statute between test and "no test but,"—was not voluntary and intelligent. It is here that we depart from the course that The Code charts, for there is no indication that the legislature considered this possibility. We have concluded, however, that it is consistent with the aims of the legislature and the structure of the statute to hold that the police officers acted lawfully in taking the blood test, even assuming, as we do, that appellant was not conscious enough to avail himself of his opportunity to refuse the test and accept the consequences.

The primary consideration of the legislature in enacting the implied consent statute was evidentiary:

> The automobile has bestowed great material, intellectual and social benefits. By the agency of the bad driver, it has also visited upon a substantial minority of persons disasters of Apocalyptic dimensions. At the forefront of the instruments of destruction, has been the drunken driver. Section 624.1 and its precursors . . . were intended to supply scientific, physiological proof of the presence or absence of the influence of intoxicants, as a substitute for or supplement to the observations of eyewitnesses, uncertain when made and usually required to be recalled long after the event. *Commonwealth v. Gallagher,* 3 Pa.Cmwlth. 371, 283 A.2d 508 (1971).

As the law now stands, no matter which alternative a driver chooses, there will be an evidentiary result: either there will be the result of a test, or there will be a fact, refusal, to be taken into account in deciding guilt or innocence. However, if we held that *no* test may be taken on

someone who is incapable of an intelligent choice, an inconsistency would appear, because there would be no evidentiary result: there would be no test result, and certainly no inference could be drawn from an unconscious person's "refusal" to take a test. Thus the Commonwealth would be left with nothing. It is more reasonable to say, and we hold, that under such circumstances as are presented here a test *may* be taken.

We recognize that as a blood test is a search, its administration on a suspect unable to refuse it must pass the test of constitutionality. In *Commonwealth v. Quarles, supra*, applying this test, we looked to *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), and held that a blood test may be taken against a suspect's wishes and without an arrest, where the police have probable cause to believe the suspect was driving while intoxicated, in order to get evidence of the blood alcohol level, evidence that is particularly evanescent. Thus the test here was constitutional.

In this regard, appellant argues that he should have been advised that he had a right to refuse to take the test and that the results could be used against him, and also that he should have been given *Miranda* warnings. Although we have accepted appellant's contention that he was not in such a state of mind at the hospital as to be capable of understanding such advice or warnings, we shall consider these arguments. In *Commonwealth v. Rutan,* 229 Pa.Super. 400, 323 A.2d 730 (1974), we held:

> Neither the Fourth Amendment ban against unreasonable searches and seizures nor Fifth Amendment privilege against self-incrimination prevents the Commonwealth from requiring that a driver submit to a breathalyzer test. [citing *Commonwealth v. Quarles,* 229 Pa.Super. 363, 324 A.2d 452 *supra*]. A driver therefore does not have a constitutional right to refuse. He has no right to refuse other than as provided in the implied consent law. Neither the Fourth nor Fifth Amendments prevents the admission into evidence of test results or of refusal. *Id.*

Since a driver has no constitutional right to refuse and no right to have evidence either of the test results or of the refusal excluded, we do not see how the Constitution requires that he be given warnings as to his lack of rights. 229 Pa.Super. at 403–4, 323 A.2d at 732.

■ We also note that blood samples are not testimonial evidence, and come under the protection of the fourth, not the fifth, amendment, *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and therefore do not get *Miranda* protection.

The judgment of the lower court is affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

HOFFMAN, J., files a concurring opinion.

HOFFMAN, Judge, concurring:

The Majority affirms appellant's conviction for driving while under the influence of intoxicating liquor.[1] In particular, the Majority reasons that § 624.1(f) of the Vehicle Code[2] permits the performance of a blood test whenever the circumstances indicate that such a test is a reasonable alternative to a breathalyzer. I disagree: § 624.1(f) only allows the performance of a blood test as an alternative to a chemical breath test when the suspect "is physically unable to supply enough breath to complete a chemical test." However, because I believe that the Commonwealth satisfied this statutory prerequisite in the instant case, I concur in the Majority's result.

1. The Vehicle Code, Act of April 29, 1959, P.L. 58, § 1037; 75 P.S. § 1037. Since the date of the incident which triggered the instant case, the Vehicle Code has been thoroughly revised. For the present analogue to 75 P.S. § 1037, *see* The Vehicle Code, Act of June 17, 1976, P.L. 162, Act No. 81, eff. July 1, 1977; 75 Pa.C.S. § 3731. Hereinafter, all references to the Vehicle Code indicate The Act of April 29, 1959.

2. The Vehicle Code, supra; 75 P.S. § 624.1(f). For the current version of this provision, *see* The Act of June 17, 1976, supra; 75 Pa.C.S. § 1547.

Subsections 624.1(a) and (f) of the Vehicle Code, supra, set forth the requirements for determining when a chemical breath test or a blood test may be taken for the purpose of determining a person's sobriety. These subsections provide:

"(a) Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor. Qualified personnel means a physician or a police officer who has received training in the use of such equipment in a training program approved by the secretary. If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons.

"(f) If for any reason a person is physically unable to supply enough breath to complete a chemical test a physician or a technician acting under his direction may withdraw blood for the purpose of determining the alcoholic content therein. Consent is hereby given by such persons. The chemical analysis of the blood taken under these circumstances shall be admissible in evidence." Section 624.1(f) explicitly predicates the extraction of blood from a person who does not expressly consent to the test upon a showing that he or she "is physically unable to supply enough breath to complete a chemical test." The Statutory Construction

Act[3] instructs us that: "[w]hen the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Despite § 624.1(f)'s clarity, the Majority improperly ignores its wording and, without explication, substitutes a "reasonableness" analysis for determining when a blood test, instead of a breathalyzer, may be taken.

Even if we purport to examine the spirit behind the instant legislative enactment, I believe that the Majority's reading of § 624.1(f) does violence to a carefully structured legislative scheme. Our Court has identified competing interests which are involved when the state orders a chemical test to determine a person's sobriety. On the one hand, the Commonwealth has an interest in attempting to secure evanescent and probative evidence of intoxication; on the other hand, an individual has an abiding interest in the integrity and sanctity of his person which deserves even more protection than that afforded to his papers and effects. *See Commonwealth v. Quarles,* 229 Pa.Super. 363, 381, 324 A.2d 452, 462 (1974).[4] Furthermore, as the Majority concedes, a blood test represents more of an intrusion than a chemical breath test. (Slip Opinion at 238). *See also Com-*

3. The Statutory Construction Act, Act of May 28, 1937, P.L. 1019, art. IV, § 51; 46 P.S. § 551.

4. Spaeth, J. authored *Quarles.* Then President Judge Watkins and Judges Cercone and Hoffman concurred in the result. Former President Judge Wright and former Judge Spaulding did not participate. In *Quarles,* the Majority, in considering a constitutional challenge to an implied consent basis for a blood test, canvassed the competing interest of the Commonwealth and driver. The Court concluded that: "[o]n balance, the driver's interests outweigh those of the Commonwealth. *The searches and seizures conducted under the implied consent law involve the person, not papers or effects. Intrusions that involve the person should be strictly limited and permissible only upon compliance with the strict standards of the Fourth Amendment.* If we found implied consent here those standards would be totally irrelevant." 229 Pa.Super. at 381, 324 A.2d at 462. (Emphasis supplied). *See also Schmerber v. California,* 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966). (Although the Court held that a state may constitutionally extract blood from an individual's person incident to a lawful arrest, the Court stressed that "the integrity of an individual's person is a cherished value of our society.")

*monwealth v. Quarles,* supra, 229 Pa.Super. at 387, 324 A.2d at 465. Our state legislature, responsive to the need to balance a person's interest in the sanctity of his body and the Commonwealth's interest in securing evidence of intoxication, has articulated a rational and precise series of steps for determining when the state may extract blood from a person without his express, voluntary, and intelligent consent.[5] Under § 624.1(a) of the Vehicle Code, if a police officer has reasonable grounds[6] to believe that a person has been driving while under the influence of alcohol, he may request a chemical test of the suspect's breath. If the suspect refuses to co-operate with such a test, the test shall not be administered. However, as a penalty for refusal, § 624.1(a) authorizes the suspension of the suspect's driving license, and § 624.1(h)[7] permits the Commonwealth to produce in future criminal prosecutions evidence of the suspect's refusal to co-operate. Thus, if reasonable grounds for a test exist at trial, the Commonwealth is entitled to either the admission of the results of a breathalyzer test or the suspect's refusal.

Section 624.1(f) constitutes the next link in the statutory scheme regulating the performance of chemical tests designed to detect evidence of intoxication. Under § 624.1(f), *if* the suspect is physically unable to complete a chemical breath test, a physician or technician may conduct a blood alcohol test. If the suspect is physically unable to complete a chemical breath test, but conscious enough to refuse to

---

5. Of course, a person may always knowingly and voluntarily waive any statutory as well as constitutional rights he may have to object to a particular blood test. *See, e. g., Commonwealth v. Watkins,* 236 Pa.Super. 397, 344 A.2d 678 (1975); *Commonwealth v. Kelly,* 235 Pa.Super. 299, 341 A.2d 141 (1975).

6. In *Commonwealth v. Quarles,* supra, we held that the "reasonable grounds" referred to in § 624.1(a) must be construed as requiring probable cause to believe that the suspect had been driving while intoxicated. Without this interpretive gloss, our Court intimated that § 624.1 would be unconstitutional.

7. Section 624.1(h) provides: "The refusal to submit to a chemical test may be admitted into evidence as a factor to be considered in determining guilt or innocence."

allow a blood test, the Commonwealth may introduce evidence of such refusal in subsequent criminal proceedings pursuant to § 624.1(h). As with § 624.1(a), the Commonwealth's evidentiary interests are fully protected at all times: either a blood test is performed or evidence of a suspect's refusal to allow such a test is admissible. Therefore, the legislature has carefully delineated a statutory scheme which provides for the minimal intrusion necessary into an individual's person while protecting the Commonwealth's evidentiary interests.

I believe that the Majority improperly alters the above legislative scheme and substitutes its own conception of the proper balance between an invasion of an individual's person and the need for a blood test. Perhaps the Majority believes that this departure is necessary in order to guard an individual against an attempt to administer a breathalyzer test when that individual is in a medically parlous state. If this is the Majority's reasoning, then it is unclear why the individual cannot be told the possible medical consequences of attempting to comply with a breathalyzer test and then asked to submit instead to a blood test. In effect, the Majority's approach substitutes its retrospective appraisal of the situation for that of the individual suspect. Because § 624.1(f) expressly conditions the performance of a non-consensual blood test upon a showing of physical inability to supply enough breath to complete a chemical test and because we should strictly delimit unnecessary intrusions into the integrity of the individual's person, I reject the Majority's importation of a "reasonableness" test into § 624.1(f).

I must now determine whether the Commonwealth produced evidence which demonstrated that appellant was physically unable to supply enough breath to complete a chemical test pursuant to § 624.1(a). I believe the Commonwealth met this burden. While a consent form for a blood test was being prepared, appellant lapsed into unconsciousness and could not be aroused. An unconscious person cannot co-operate with a breathalyzer test which requires active participation. Indeed, this conclusion flows so logical-

ly that I do not understand why the Majority reaches the issue of whether a gloss of "reasonableness" may be imposed upon § 624.1(f)'s statutory prerequisite for a blood test without express consent. Accordingly, I concur in the Majority's result.