Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Roger P. Dourte, Appellee.

Argued March 4, 1982, before President Judge CRUMLISH and Judges ROGERS and BLATT, sitting as a panel of three.

*Harold H. Cramer,* with him *Ward T. Williams,* Chief Counsel, Transportation, for appellant.

*John F. Pyfer, Jr., Allison & Pyfer,* for appellee.

OPINION BY JUDGE ROGERS, May 17, 1982:

This case has to do with chemical tests of the breath or blood of operators of motor vehicles for the purpose of determining the alcoholic content of their blood.

The appellee, Roger P. Dourte, was involved in a single vehicle accident in Lancaster County. A police officer asked him at the scene whether he would submit to a test of his breath and Dourte agreed. No breath test was ever taken because Dourte, who was injured about the face, was taken to the hospital. The police officer went to the hospital an hour or so later where he told Dourte that he was under arrest for driving under the influence of alcohol. He then asked Dourte to submit to a chemical test of his blood telling him, as required by law, that a refusal would result in suspension or revocation of his operator's privilege. Dourte refused to submit to the blood test.[1] The Commonwealth by the Department of Transportation, Bureau of Traffic Safety, suspended Dourte's operating privilege for six months. Dourte appealed and the Court of Common Pleas, which found that Dourte was

---

[1] Both parties quarrel with the hearing judge's findings—the Commonwealth to the finding that Dourte was not in such condition at the hospital that the police officer could reasonably have believed he was unable to supply enough breath to complete a breath test; and Dourte to the finding that he in fact refused to take the blood test. Both findings are supported by the record and may not be disturbed. *Commonwealth v. Hall,* 475 Pa. 482, 380 A.2d 1238 (1977).

able to complete a breath test at the time he was requested to submit to the blood test, reversed the Commonwealth's action. The Commonwealth has appealed, contending that the Vehicle Code effective on the date of the occurrence, being that enacted June 17, 1976, and appearing at 75 Pa. C. S. §§101-9301, empowered it to suspend or revoke Dourte's privilege under the circumstances of this case.

The provisions of the just mentioned 1976 Vehicle Code pertinent are:

§1547. Chemical test to determine amount of alcohol.

(a) General rule.—Any person who operates a motor vehicle in this Commonwealth shall be deemed to have given consent to a chemical test of breath or blood for the purpose of determining the alcoholic content of blood if a police officer shall have reasonable grounds to believe the person to have been driving a motor vehicle while under the influence of alcohol. . . .

(b) Suspension for refusal.—

(1) If any person placed under arrest for driving under the influence of alcohol is requested to submit to a chemical test and refuses to do so, the test shall not be given but upon notice by the police officer, the department shall:

(i) suspend the operating privilege of the person for a period of six months; or

(ii) revoke the operating privilege of the person for a period of one year for a second or subsequent refusal within a period of three years.

. . . .

(g) Blood test in lieu of breath test.—If for any reason a person is physically unable to sup-

ply enough breath to complete a chemical test, a physician or nurse or a technician acting under a physician's direction may withdraw blood for the purpose of determining its alcoholic content. The chemical analysis of the blood taken under these circumstances shall be admissible in evidence in the same manner as are the results of the breath chemical test. The operating privilege of any person who refuses to allow a blood test under the above circumstances shall be suspended pursuant to subsection (b).

These, the Commonwealth argues require it to suspend or revoke the operating privilege of one who refuses to submit to a blood test under any circumstances, including those here, to wit, the operator's agreement to submit to a breath test and his physical ability to supply enough breath to complete the breath test.

The rule of law prior to the present Vehicle Code was clearly contrary to that now advanced by the Commonwealth. The rule was that the decision to request a blood test, a less desirable alternative to a breath test, was proper only where there was a reasonable basis for believing that the driver was in such medical condition that he was unable to summon enough breath to complete a breathalyzer test. *Commonwealth v. Lee*, 257 Pa. Superior Ct. 326, 390 A.2d 845 (1978); *Commonwealth v. Funk*, 254 Pa. Superior Ct. 233, 385 A.2d 995 (1978). The Commonwealth, however, points to what it believes are significant differences between the provisions of the new Vehicle Code which we have reproduced above and the provisions of Section 624.1 of the former Vehicle Code,[2] in

---

[2] Section 624.1 of The Vehicle Code, Act of April 29, 1959, P.L. 58, *as amended*, added by Section 1 of the Act of July 28, 1961, P.L. 918, *formerly* 75 P.S. §624.1, repealed by the Act of June 17, 1976, P.L. 162.

effect when the cases just cited were decided. We now reproduce Section 624.1:

§624.1. Intoxication chemical tests, etc.

(a) Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood. . . . If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing.

. . . .

(f) If for any reason a person is physically unable to supply enough breath to complete a chemical test a physician or a technician acting under his direction may withdraw blood for the purpose of determining the alcoholic content therein. Consent is hereby given by such persons. The chemical analysis of the blood taken under these circumstances shall be admissible in evidence.

The significant change made by subdivision (a) of Section 1547 of the new Code to subdivision (a) of Section 624.1 of the old was by the addition of the words "or blood" after the word "breath" in the first sentence, with the effect that the later references in the new Code to "chemical test" include a chemical test of blood as well as breath and with the result that whereas Section 624.1(a) of the old Code authorized suspension for refusal to take a breath test only, Sec-

tions 1547(a) and 1547(b) of the new say that suspension or revocation shall be the consequence of refusal to submit to either the breath or blood test. We are required, however, to give effect to every provision of Section 1547, which brings us to subsection (g) entitled "Blood test *in lieu of breath test*," (emphasis supplied) (a heading suggesting that the blood test is a provisional alternative to the breath test) which first provides "[i]f for any reason a person is physically unable to supply enough breath," his blood may be tested and that "[t]he operating privilege of any person who refuses to allow a blood test *under the above circumstances* shall be suspended. . . ." (Emphasis supplied.) The first sentence of 1547(g) plainly means that the blood of one who cannot perform a breath test may be withdrawn by a physician or a nurse or technician under the direction of a physician. The last sentence, just as plainly we believe, says that one who refuses consent to a blood test "under the above circumstances"—including the circumstance of inability to supply breath—shall have his license suspended. The converse of course applies that one who, as the findings here established was the appellee's case, is able to supply breath cannot be suspended for refusing to submit to a blood test.

The Commonwealth, in apparent reference to Sections 1547(a) and 1547(b), providing that a driver consents to a blood chemical test and that refusal to submit to such will result in revocation or suspension, cites the rule of statutory construction at 1 Pa. C. S. §1921(b), that the letter of a clear law should not be disregarded in pursuit of its spirit. This is apt so far as subsections (a) and (b) are concerned. But subsection (g) which is particularly addressed to blood tests, says something different—so different, indeed, that the Commonwealth is forced to dismiss the last sentence of the subsection as surplusage: to which reply

might aptly be made that 1 Pa. C. S. §1933 requires that when general and specific provisions conflict, the special shall prevail and 1 Pa. C. S. §1921(a) tells us that we are required, if possible, to give effect to all of a statute's provisions.

In short, we agree with the court below that the Legislature in housecleaning the old Vehicle Code and producing the new, did not intend to, or in fact effect, a change in the rule that the refusal to submit to a blood test may lead to the suspension or revocation of the operating privilege only of the driver who is reasonably believed by the police officer to be physically unable to supply enough breath to complete the breath test.

Order affirmed.

### ORDER

AND Now, this 17th day of May, 1982, the order of the Court of Common Pleas of Lancaster County, docketed below at Trust Book No. 45, Page 402, filed June 25, 1980, is affirmed.

Judge MENCER did not participate in the decision in this case.