**Kenneth Winston ASHFORD**

v.

**Steven SKILES, et al.**

**Civ. A. No. 91–6385.**

United States District Court, E.D. Pennsylvania.

Nov. 12, 1993.

---

**110**

Harry C. Jackson, Lancaster, PA, for plaintiff.

Neil L. Albert, Lancaster, PA, Jordan Pecile, Law Offices of Jordan Pecile, Wilkes-Barre, PA, Andrew A. Borek, Harris & Silverman, Philadelphia, PA, Charles T. Roessing, William D. Kennedy, White and Williams, Paoli, PA, for defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Before me are two motions for summary judgment on plaintiff's *pro se* action under 42 U.S.C. § 1983 for violation of his civil rights. They were filed by (1) St. Josephs Hospital and Nurse Ann Newcomer ("Hospital defendants"); and, (2) Steven Skiles, James Neimer, Andrew Morgan, Jeff Kraus, Ken Switzer, and Ralph Anderson ("Lancaster County defendants").

In these motions I am called upon to decide: (A) if the issue of excessive force was decided at a state court suppression hearing prior to plaintiff's trial for driving under the influence such as to preclude plaintiff from re-litigating the issue of whether when arresting plaintiff the defendant police officers used excessive force in violation of the Fourth Amendment; and (B) if that same factual determination precludes re-litigating the issue of whether the hospital defendants withdrew plaintiff's blood without his consent in violation of the Fourth Amendment. I conclude that if the state court determinations were final, issue preclusion would pre-vent plaintiff from litigating the excessive force and blood withdrawal issues.

## I. STATEMENT OF MATERIAL FACTS

On February 26, 1991, at approximately 5:22 a.m. in the city of Lancaster, police officers James Neimer and Steven Skiles saw plaintiff Ashford with a passenger, David Gray, driving a car. According to the officers, the car was swerving down a narrow street at an excessive rate of speed and was "nearly striking vehicles that were parked on both sides of the street" (*Commonwealth v. Ashford,* No. 2459–1991, Transcript of Proceedings, Suppression Hearing, 1/14/92 at 44, 62–63) ("Tr."). Because the car was being driven in an erratic manner, the police officers stopped it to investigate (Tr. at 28, 99). Mr. Ashford admits to having consumed two and one half cans of beer within three to four hours that evening, and Mr. Gray to having consumed both beer and used cocaine (Tr. at 28, 99).

Under plaintiff Ashford's version of the facts, Officer Skiles stopped the car and asked Mr. Ashford for his driver's license (Tr. at 19). When Mr. Ashford told the officer that he did not have his license, the officer ordered Mr. Ashford to get out of the car, walk to the front, and put his hands on the hood (Tr. at 19). Mr. Gray got out of the car at about the same time as Mr. Ashford and Officer Neimer detained him (Tr. at 19). At this point, two police cars arrived with Officers Ken Switzer, Ralph Anderson, Andrew Morgan, and Jeff Kraus (Tr. at 51–52, 66). Mr. Ashford claims that he was standing completely motionless, facing his vehicle, with his back turned towards the officers, when he heard one of the officers say the words "car thief" (Tr. at 21). Upon hearing those words Mr. Ashford claims that he was struck on the head and fell, and that he attempted to get up, but was struck once again and rendered unconscious (Tr. at 21).[1]

---

**1.** Mr. Ashford testified at the suppression hearing that he could not identify any of the police officers who stood behind him or the officer who said the words "car thief." (Tr. at 21–22). Yet in his second amended complaint, plaintiff states that Officer Skiles "immediately attacked Plaintiff by assaulting Plaintiff upon his skull with a metal black object that looked like [sic] (Black-

Jack) night stick. As defendant Skiles repeatly [sic] beat Plaintiff upon his skull and body with the object, officers James Neimer, Andrew Morgan, Jeff Crouse [sic], Ken Switzer, and Ralph Anderson joined in on the attack by hitting Plaintiff all over his body and head until Plaintiff was knocked totally unconscious by their life-threat-

Mr. Ashford further contends that he did not resist arrest, act in a threatening manner, or make any statements to the police officers at the time this incident took place (Tr. at 22).

The next thing that Mr. Ashford remembers is waking up in the police station at approximately 6:00 p.m. that same day and being taken to the hospital with bruises all over his body and a leg injury (Tr. at 22). At the hospital, Mr. Ashford was told that he had torn ligaments in his left leg that required a leg brace (Tr. at 22). Mr. Ashford does not remember how he sustained these injuries (Tr. at 22).

According to Officers Skiles and Neimer, Mr. Ashford was unconscious at the time his car was stopped and remained unconscious throughout the time that the defendant officers had contact with him (Tr. at 50, 66). Officer Skiles testified that when he stopped Mr. Ashford's car, he found the car's driver side door open, with the left half of Mr. Ashford's body hanging outside the door, and the car in neutral and moving forward (Tr. at 48). When he approached the car, Officer Skiles realized that Mr. Ashford was unconscious (Tr. at 48). Based upon Mr. Ashford's erratic driving, the strong odor of alcohol emanating from Mr. Ashford, and the relatively short period of time in which Mr. Ashford had become unconscious, Officer Skiles placed Mr. Ashford under arrest for driving under the influence of alcohol (Tr. at 50).

According to Officer Neimer, Mr. Ashford was placed in a police car approximately one hour after his arrest, and transported by Officer Neimer and a Community Services Aide from the police station to St. Josephs Hospital for a blood alcohol test (Tr. at 72). Upon arrival at the hospital, Mr. Ashford was placed in a wheelchair and wheeled to the room where his blood was eventually drawn by Nurse Newcomer (Tr. at 75). At no time did a physician or nurse make a medical determination as to why Mr. Ashford was unconscious (Tr. at 83). Officer Neimer testified that Mr. Ashford was still unconscious at the time that he was returned to the police station (Tr. at 76). Mr. Ashford

was charged with driving under the influence of alcohol (Tr. at 51).

## II. DISCUSSION

On July 29, 1991, Mr. Ashford instituted this action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Middle District of Pennsylvania against Officers Steven Skiles, James Neimer, Andrew Morgan, Jeff Kraus, Ken Switzer, and Ralph Anderson of the Lancaster County Police Department, Nurse Ann Newcomer, an employee of St. Josephs Hospital, and St. Josephs Hospital. On September 3, 1991, the action was transferred to the Eastern District of Pennsylvania.

Mr. Ashford asserts three distinct claims: (1) that all of the defendant officers used excessive force by assaulting him in violation of the Fourth Amendment; (2) that Nurse Newcomer and St. Josephs Hospitals withdrew his blood without his consent in violation of the Fourth Amendment; and, (3) that Officer Neimer and Nurse Newcomer conspired to conceal the defendant officers' use of excessive force.

All of the defendants have moved for summary judgment. Both sets of defendants seek to rely on the doctrine of issue preclusion, arguing that the factual basis of plaintiff's claims has already been litigated. The defendant officers assert that the issue of excessive force was litigated and decided at a suppression hearing prior to plaintiff's trial for driving while intoxicated. Nurse Newcomer and St. Josephs Hospital argue that the issue of consent was also decided against plaintiff in that hearing, barring further litigation. In addition, the Hospital defendants argue that they are immune from civil liability pursuant to 75 Pa.Cons.Stat.Ann. § 1547(j) (Supp.1992). While neither Officer Neimer nor Nurse Newcomer have addressed the plaintiff's allegation of conspiracy to cover-up the use of excessive force, that claim is precluded by this court's favorable ruling on the two prior issues.

▮ To succeed on a motion for summary judgment, the moving party must establish that no genuine issues of material fact

ening attack." (Plaintiff's Second Amended Complaint at 2).

remain in dispute and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party; a factual dispute is "material" if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). In deciding whether the standards for summary judgment have been met, the evidence must be viewed in the light most favorable to the non-moving party. *Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Invest.,* 951 F.2d 1399, 1404 (3d Cir.1991). Where there is a complete failure of proof concerning an essential element of the non-moving party's case, all other facts are rendered immaterial, and the moving party is entitled to a judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552.

A. *Plaintiff's § 1983 claim against the Lancaster County defendants.*

To maintain his § 1983 claim against the Lancaster County defendants, plaintiff must demonstrate that the conduct complained of was committed by a person acting under color of state law and that the conduct deprived the plaintiff of the rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir.1993).

The Lancaster County defendants argue that the question of whether the officers violated plaintiff's constitutional rights was decided against plaintiff at the suppression hearing prior to his criminal trial in the Pennsylvania Court of Common Pleas in Lancaster County on the charge of driving under the influence. If plaintiff cannot re-litigate that issue, he cannot prove one of the basic elements of his § 1983 claim and the Lancaster County defendants are thus enti-

tled to summary judgment as a matter of law.

■ The doctrine of issue preclusion is applicable to § 1983 actions where the alleged conduct underlying the § 1983 claim was the subject of a state court criminal proceeding which afforded the parties a full and fair opportunity to litigate all potential civil rights claims. *Allen v. McCurry,* 449 U.S. 90, 104, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980). A finding of probable cause made in a state court suppression hearing may be an appropriate basis for application of the doctrine of issue preclusion in a § 1983 claim. *Lomax v. Smith,* 501 F.Supp. 119, 122 (E.D.Pa.1980); *Moore v. Smythe,* No. 90–0432, 1993 U.S.Dist. LEXIS 239, at *4 (E.D.Pa.1993); *Forrey v. Switzer,* No. 89–9150, 1991 WL 160894, 1991 U.S.Dist. LEXIS 11479 (E.D.Pa.1991).

■ When determining whether a state judicial or administrative proceeding precludes a subsequent federal court action, the federal courts must "give a prior state judgment the same effect as would the adjudicating state." *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988); *Forrey,* No. 89–9150, 1991 WL 160894, *2, 1991 U.S.Dist. LEXIS 11479, at *5.[2] Therefore, the Pennsylvania law on issue preclusion must be applied in deciding whether the defendant is collaterally estopped from asserting his claim.

■ Under Pennsylvania law, a party is precluded from asserting a claim when: (1) the party against whom issue preclusion is asserted was a party or in privity with the party to the prior litigation; (2) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in question at the prior adjudication; (3) the issue sought to be precluded was the same as that raised in the prior action; (4) the decision in the prior proceeding was essential to the judgment; and (5) a final judgment was rendered on the merits. *See Pittsburgh v. Zoning Bd. of Adjustment,* 522 Pa. 44, 55, 559 A.2d 896, 901 (1989); *Forrey,* No. 89–9150, 1991 WL 160894, *2, 1991 U.S.Dist.

---

**2.** The full faith and credit clause does not permit federal courts to assess the merits of state court judgments. 28 U.S.C.A. § 1738; *Koen & Assoc.*

*v. City of Cairo,* 909 F.2d 992, 1000 n. 8 (7th Cir.1990).

LEXIS 11479, at *5.[3] Four of these five elements have been met.

■ At his trial for driving under the influence of alcohol, Mr. Ashford, represented by counsel, filed a motion to suppress the results of the blood alcohol test performed at St. Josephs Hospital. Mr. Ashford argued that the results of the blood alcohol test should be suppressed because: (1) he was rendered unconscious by the police officers, and therefore the withdrawal of his blood without a warrant constituted a search and seizure in violation of the Fourth Amendment; or, in the alternative, that (2) the police officers lacked probable cause to believe that he was intoxicated, and therefore the withdrawal of his blood without a warrant constituted a search and seizure in violation of the Fourth Amendment (Tr. at 106).

The Commonwealth argued that if the police officers had probable cause to believe that Mr. Ashford was driving while intoxicated, the officers were authorized, pursuant to 75 Pa.Cons.Stat.Ann. § 1547(a)(1) (Supp. 1992), to request the withdrawal of Mr. Ashford's blood (Tr. at 105). The Commonwealth also contended that a motorist has the right to refuse the administration of a blood alcohol test only when he or she is conscious; thus, an unconscious motorist is taken to have impliedly consented to having his or her blood withdrawn (Tr. at 105).

The Honorable Louis J. Farina, Judge of the Court of Common Pleas of Lancaster County, held that Officers Neimer and Skiles had probable cause to believe that Mr. Ashford was driving under the influence of alcohol, and that Mr. Ashford's unconsciousness "was not the result of anything done to him by the police" (Tr. at 112). Judge Farina concluded that Mr. Ashford had "passed out because of inebriation" and the motion to suppress the blood alcohol test results was denied (Tr. at 112).

The first and second elements of the doctrine of issue preclusion have been met since the plaintiff was a party in the underlying case, and the plaintiff had a full and fair opportunity to litigate his civil rights contentions at the suppression hearing. Mr. Ashford, through his attorney Barry G. Goldman, Esq., cross-examined both Officer Skiles and Officer Neimer; he also had the opportunity to call the other officers he claims used excessive force. Mr. Ashford also testified as to his arrest, and was represented by counsel at both his suppression hearing and at his criminal trial. No more is necessary for purposes of collateral estoppel. See Commonwealth v. Martinelli, 128 Pa.Commw. 448, 563 A.2d 973 (1989) (where court held that the fact that more conclusive evidence might be presented at a subsequent hearing is not sufficient nor relevant for disallowing the application of the doctrine); see also Forrey, No. 89–9150, 1991 WL 160894, *3, 1991 U.S.Dist. LEXIS 11479, at *8 (where court held that pro se plaintiff bringing § 1983 action had a full and fair opportunity to litigate his civil rights claim at suppression hearing because he had cross-examined all of the witnesses against him and testified to his version of the arrest, detention, and interrogation at the hearing).

The third element of the doctrine of issue preclusion has also been established since the claim of excessive force was distinctly put at issue in the suppression hearing. At the suppression hearing Mr. Goldman stated:

Your Honor, there's [sic] two matters which are related here in terms of suppression, in my opinion, and one is whether or not Mr. Ashford was rendered unconscious by excessive force on the part of police, and the other is, if he was not rendered unconscious, whether they had probable cause, despite the fact that he was unconscious to request blood be drawn

(Tr. at 106). Mr. Goldman went on to state:

I believe there is a severe question here as to whether or not excessive force was used. Certainly the position must be that if it was used to render a person unconscious, as matters [sic] of Constitutional rights and public policy, you cannot render a person unconscious, then take his blood without consent. If we find, in fact, that

3. Pennsylvania does not require that the party asserting collateral estoppel be a party to the previous action. In re Ellis' Estate, 460 Pa. 281,

333 A.2d 728 (1975); Gulentz v. Schanno Transp., Inc., 355 Pa.Super. 302, 513 A.2d 440 (1986).

excessive force was not used, then we still have the matter of whether independent probable cause was established (Tr. at 108). Mr. Goldman concluded: "I find that excessive force may have been used. It's been put forth by Mr. Ashford" (Tr. at 110).

The fourth element of issue preclusion has been met since the findings concerning probable cause and excessive force were essential to the judgment denying the suppression of the blood alcohol test results. The defendant officers authorized the withdrawal of plaintiff's blood pursuant to 75 Pa.Cons.Stat.Ann. § 1547(a)(1) (Supp.1992), which states that:

Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both.

75 Pa.Cons.Stat.Ann. § 1547(a)(1) (Supp. 1992). This section provides that, the defendant officers could authorize the withdrawal of plaintiff's blood only if they had probable cause to believe that the plaintiff was driving while intoxicated. *Id.* Judge Farina clearly made this finding as I will explain later. This section also confers upon a motorist the right to assert a "knowing and conscious refusal" to chemical testing. *Commonwealth v. Hipp,* 380 Pa.Super. 345, 359, 551 A.2d 1086, 1092 (1988). However, the Pennsylvania Superior Court has held that when a motorist is found unconscious and a police officer has probable cause to believe that the motorist was driving under the influence of alcohol pursuant to § 1547(a)(1), the motorist impliedly consents to the chemical test. *See Commonwealth v. Pelkey,* 349 Pa.Super. 373, 378, 503 A.2d 414, 416 (1985) (police are authorized to search and seize motorist's blood where an officer has probable cause to believe that motorist was driving while intox-

icated, even where the motorist was unconscious and could not consent to the blood test); *Commonwealth v. Hlavsa,* 266 Pa.Super. 602, 603, 405 A.2d 1270 (1979) (consent is unnecessary where unconscious motorist has been placed under arrest); *Commonwealth v. Funk,* 254 Pa.Super. 233, 240, 385 A.2d 995, 999 (1978) (police officer may authorize blood test when a motorist "is not conscious enough to avail himself of his opportunity to refuse the test and accept the consequences.").

Since Mr. Ashford did not dispute that he was unconscious when the blood was drawn, the remaining issue for Judge Farina was the manner by which Mr. Ashford was rendered unconscious. If Mr. Ashford was rendered unconscious through intoxication, the blood alcohol test results would not be suppressed. *Pelkey,* 349 Pa.Super. at 378, 503 A.2d at 416; *Hlavsa,* 266 Pa.Super. at 603, 405 A.2d at 1270; *Funk,* 254 Pa.Super. at 240, 385 A.2d at 999. If, on the other hand, Mr. Ashford was rendered unconscious through the use of excessive force by the police officers, the blood alcohol test results would have to be suppressed. Judge Farina had to find *both* that there was probable cause and that Mr. Ashford impliedly gave his consent in order to deny the motion to suppress. Thus, the findings that the defendant officers acted with probable cause and did not use excessive force were essential to the judgment denying the suppression of the blood alcohol test results.

The fifth and final element of issue preclusion has not been satisfied because, while Judge Farina ruled on the merits of the issue of excessive force, that ruling is not yet "final". At the conclusion of the suppression hearing, Judge Farina found that the plaintiff had "passed out because of inebriation," and that the plaintiff's unconscious state "had nothing to do with what the police had done to him" (Tr. at 112). Judge Farina also held that "the involuntary taking of [Mr. Ashford's] blood was with probable cause and proper" (Tr. at 112). Mr. Ashford appealed this decision to the Superior Court of Pennsylvania, which affirmed Judge Farina's order (Lancaster County defendants' supplemental affidavit at 1). Mr. Ashford then petitioned the Supreme Court of Pennsylva-

nia for allowance of appeal; that petition is still pending (Tr. at 112).[4]

██ That judgment, however, is not yet final. The federal rule, and the rule in most states, is that the pendency of an appeal does not diminish the collateral estoppel effect of a valid final judgment. 18 Charles A. Wright et al., Federal Practice and Procedure §§ 4432–4433 (1982). However, the Court of Appeals for the Third Circuit recognized the severe split of authority on this issue in Pennsylvania and adopted the posture that the District Court should stay its determination until the issue is resolved upon appeal. *Bailey v. Ness*, 733 F.2d 279, 283 (3d Cir. 1984). Therefore, I will stay consideration of the motions for summary judgment pending the outcome of the petition for allowance of appeal before the Supreme Court of Pennsylvania.

### B. *Plaintiff's § 1983 claim against the Hospital defendants.*

Mr. Ashford claims that Nurse Newcomer and St. Josephs Hospital violated his Fourth Amendment rights against search and seizure when they withdrew his blood without his consent (Plaintiff's Second Amended Complaint at 2). The Hospital defendants have likewise satisfied the first four prerequisites for the operation of issue preclusion: 1) plaintiff challenged the withdrawal of his blood pursuant to the Fourth Amendment at the suppression hearing; 2) plaintiff was a party in the underlying suit; 3) plaintiff had a full and fair opportunity to litigate his claim at the suppression hearing; and 4) a judgment regarding the constitutional validity of the blood test was essential as a threshold matter to a judgment concerning suppression of the test results.

At the suppression hearing, the plaintiff argued that the blood alcohol test results should be suppressed due to a violation of his Fourth Amendment privacy rights (Tr. at 14, 110). Plaintiff's attorney, Mr. Goldman, alleged that the withdrawal of plaintiff's blood constituted a search, and that:

Evidence seized from that search was physical evidence in the manner of blood, and certainly the People are going to introduce that at this time. I believe his privacy rights were violated in that search

(Tr. at 14). Mr. Goldman also stated that:

Certainly the position must be that if it was used to render a person unconscious, as matters [sic] of Constitutional rights and public policy, you cannot render a person unconscious, then take his blood without consent

(Tr. at 108).

Judge Farina could not deny the motion to suppress the blood alcohol test results without finding that the drawing of Mr. Ashford's blood was consistent with the Fourth Amendment. Judge Farina ultimately decided that the "involuntary taking of [Mr. Ashford's] blood was ... proper" (Tr. at 112). Consequently, plaintiff is precluded from re-litigating his claim that the withdrawal of his blood by Nurse Newcomer and St. Josephs Hospital violated his Fourth Amendment privacy rights. However, plaintiff is currently challenging the trial court's findings in the suppression hearing before the Supreme Court of Pennsylvania. Thus, as with the § 1983 claim against the officers, I will stay my decision until plaintiff's appeal is resolved.

### C. *Plaintiff's § 1983 claim against defendants Officer Neimer and Nurse Newcomer.*

██ Plaintiff asserts in his amended complaint that Nurse Newcomer and Officer Neimer were engaged in a conspiracy to conceal the defendant officers' use of exces-

---

4. None of the briefs referred to the plaintiff's appeal before the Superior Court of Pennsylvania. The plaintiff's response to the motion, however, revealed that plaintiff had an appeal pending before the Superior Court of Pennsylvania "with regard to ineffective assistance of counsel and the Fourth Amendment violation." This court issued an order to both sets of defendants bringing to their attention the alleged pendency of plaintiff's appeal before the Superior Court and requesting that the defendants submit to the court evidence of the current appeal status of plaintiff's conviction. *See* attached order. The Lancaster County defendants then notified this court that there was a Superior Court affirmance of the plaintiff's criminal conviction and that the plaintiff had filed a petition for allowance of appeal before the Supreme Court of Pennsylvania.

sive force upon the plaintiff in violation of § 1983 (Plaintiff's Second Amended Complaint at 2). "Section 1983 does not create a cause of action *per se* for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under Section 1983." *Defeo v. Sill*, 810 F.Supp. 648, 658 (E.D.Pa.1992); *Dixon v. Lawton*, 898 F.2d 1443, 1449 (10th Cir.1990). The resolution of this claim is dependent upon a determination of the plaintiff's § 1983 claim against the defendant officers asserting excessive force. If issue preclusion operates to bar a finding that excessive force was employed by the defendant officers, there can be no liability for conspiracy to cover-up excessive force in violation of § 1983.[5] *Defeo*, 810 F.Supp. at 658; *Dixon*, 898 F.2d at 1449.

### Conclusion

Defendants assert in their summary judgment motions that Pennsylvania's doctrine of issue preclusion is applicable to issues that were litigated in a suppression hearing. Plaintiff challenged the trial court's findings in the suppression hearing by filing a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania. Thus, a final judgment has not yet been rendered on the merits and the application of issue preclusion is inappropriate at this time. Federal proceedings must be stayed until there is a final disposition of the appeal before the state court.

For the reasons set forth in this memorandum, I will stay consideration of the Lancaster County and Hospital defendants' motions for summary judgment pending the outcome of the plaintiff's petition for allowance of appeal before the Supreme Court of Pennsylvania.

---

5. As an alternative basis for summary judgment, the Hospital defendants assert that they are immune from civil liability for withdrawing plaintiff's blood pursuant to § 1547(j) of the Pennsylvania Consolidated Statutes. Section 1547(j) states that:

> No nurse or hospital shall be civilly liable for withdrawing blood and reporting the results to the police at the request of a police officer pursuant to this section. No nurse or hospital

### ORDER

AND NOW, this 12th day of November 1993, upon consideration of the defendants' motion for summary judgment, plaintiff's response, and defendants' supplemental affidavit, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that this action be placed in civil suspense. Each party shall notify the court as to the status of the appeal on or before January 11, 1994 and every (3) months thereafter until the Petition for Allowance of Appeal has been denied or otherwise disposed of by the Supreme Court of Pennsylvania.

### ORDER

AND NOW, this 24th day of September 1993, I have reviewed defendants' motions for summary judgment and plaintiff's response which states that he "has an appeal pending at this current moment with (sic) Superior Court of Pennsylvania with regard to ineffective assistance of counsel and the Fourth Amendment violation ...".

Defendants claim that they are entitled to summary judgment on the grounds that plaintiff is collaterally estopped from re-litigating in this section 1983 action matters determined at the suppression hearing in the state criminal proceeding. Therefore, the parties have seven (7) business days from the date of this order to submit to the court evidence of the current appeal status of plaintiff's conviction.

may refuse to perform such tests and provide the results to the police officer except as may be reasonably expected from unusual circumstances that pertain at the time the request is made.

75 Pa.Cons.Stat.Ann. § 1547(j) (Supp.1992). I need not address the merits of this defense since the plaintiff may be precluded from litigating his claim against the Hospital defendants by the doctrine of collateral estoppel.